THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAVID C. GALVAN *et al.*, Defendants-Appellants.

First District (5th Division)    No. 57406

Opinion filed September 24, 1976.

Thomas J. Maloney and Joseph A. Malek, both of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Michael E. Shabat, and Larry L. Thompson, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

After a jury trial, defendants—who had been jointly tried with a third defendant, Augustine Soto (who is not a party to this appeal)—were convicted of rape and conspiracy with the intent to commit the offense of aggravated kidnapping. (Ill. Rev. Stat. 1967, ch. 38, pars. 10—2 and 8—2.) They were each sentenced to concurrent terms of 8 to 20 years and 4 to 8 years respectively. The sole contention on appeal is whether defendants were denied a fair trial by the failure of the court to give a cautionary instruction to the jury during the trial that certain testimony should not be considered in determining the guilt of defendants.

Defendants do not challenge the sufficiency of the evidence. Thus, we need only recite those portions of the extensive record relating to their contention.

It appears that the complaining witness, a 17-year-old girl, testified that on July 21, 1969, she left work at a drive-in restaurant and went to a nearby bus stop. While waiting for the bus, a car driven by Soto, in which Barrera was a passenger, stopped and the latter asked whether she wanted a ride. She declined, and the car was driven away, but it returned several minutes later and she again declined a ride. She then began to walk to the next bus stop to avoid a further confrontation, but the Soto vehicle returned. Barrera exited, displayed a knife, and ordered her into the car. After driving around the area for awhile, they eventually went to a building subsequently identified as 2702 South Normal Avenue, in Chicago. She was taken to the basement of this building, which had the name "Latin Kings" painted on the door. A number of other young men were there, and when Soto and Barrera said, "Get her down," she was pushed to the ground. While Galvan held her shoulders, some of the others removed her undergarments. She was attacked by about eight individuals, including defendants, during which time several of the attackers were called by nicknames, including Soto, who was addressed as "Augie" and Galvan, who was called "Chico."

After the attacks, she picked up some of her undergarments and left. Barrera and Soto walked with her several blocks and warned her not to call the police. At about 11:30 p.m., she eventually reached a restaurant, where her brother worked. There, her mother and the police were called, and the latter took her to the hospital.

It appears that she returned that evening to the area of the attacks with the police and her mother. They located the building involved, and her underpants were found in a pile of rubble near the basement stairway. The next day she saw Soto's vehicle and obtained the license plate number, which she gave to the police, and they arrested Soto, the defendants, and another individual who were riding in the car. She identified Soto and the defendants after the arrest, but she was uncertain as to the participation of the fourth person in the car.

Both defendants presented alibi defenses. Barrera and the sister of his girl friend testified that he was at his girl friend's house during the time of the attacks. He stated that he was driven there by Ephram Gonzales and the latter's girl friend, Eva Sotomayor.

Galvan testified that he was at the home of his aunt on the evening of the occurrence. The aunt, her teenage daughter, and a young woman who was the mother of his child, corroborated this alibi. They also denied that he was called "Chico." When Galvan had rested his case, and prior to the presentation of the defenses of Soto and Barrera, counsel for defendants

asked the court to give a cautionary instruction to the jury that any subsequent evidence offered should not be considered as to defendant Galvan. The following instruction was tendered and refused:

"I told you earlier at the conclusion of all the evidence I would instruct you as to the law. You are now instructed that from this point on until I instruct you further any evidence now heard shall not be considered by you in reaching your verdict as to the defendant Galvan."

Soto then testified that he met the complainant at a drive-in a week before the attack. She asked him whether there were any parties during the following week, and he informed her of several. On the night in question, he played baseball until 9:30 p.m. and then went to a friend's house, where he stayed until about 11 p.m. He had planned to go to a party but wasn't sure of the location, and he went to a park at 27th Street and Normal Avenue to find someone who might know the location of the party. There, he met the complainant, who had a disheveled appearance. They had a brief conversation, but she would not tell him what had happened to her, and he then drove her to the restaurant where her brother worked.

Victor Rodriguez, a witness called by Soto, who lived in the building where the attack occurred, testified that he was outside the building involved on the evening in question and saw a girl matching the complainant's description approach Soto. After a brief conversation, Soto assisted the girl into his car and they drove away. Rodriguez stated he was certain that the date was July 21, 1969, because the following day he commenced work at Spiegel.

In rebuttal, Eva Sotomayor testified for the State that she had never dated Ephram Gonzales and that she had not been in his automobile, as testified to by Barrera. Gonzales subsequently testified in surrebuttal, but did not corroborate Barrera's testimony that he had been driven to his girl friend's home by Gonzales on the evening of the occurrence. In addition, the record discloses that although Barrera's girl friend was present in the court building, she was not called as a witness to substantiate his alibi.

Also in rebuttal, the State called Spiegel's personnel records clerk, who impeached the testimony of Soto's witness, Rodriguez, that he had seen Soto and a girl resembling complainant on the night in question by showing that the latter had not started to work for Spiegel until September 15, 1969, almost two months after the attacks. Then, an assistant State's Attorney and an investigator who had interviewed Rodriguez after he had initially left the stand testified that Rodriguez admitted to them he had lied about seeing Soto and the girl that evening. Rodriguez was then recalled by the State and recanted his prior testimony by stating that he was inside the building that evening and did not see

Soto and the girl. He stated he had lied about seeing them, because Soto had asked him to do so, and he feared for his family's safety if he did not.

During the presentation of the State's rebuttal testimony, defendants' counsel made numerous objections that it was hearsay as to defendants and urged that a cautionary instruction be given, as previously requested. These requests were also refused.

Subsequently, during the conference on instructions, defense counsel submitted IPI Criminal No. 3.05, which, as given, read:

> "You should give separate consideration to each defendant. Each is entitled to have his case decided on the evidence and the law which is applicable to him.
>
> Any evidence which was limited to one defendant should not be considered by you as to any other defendant."

OPINION

Defendants argue that they were denied a fair trial when the court did not limit evidence regarding Rodriguez's perjured testimony solely to the question of Soto's guilt. They contend that a cautionary instruction should have been given during trial, because there was nothing to indicate that they had any knowledge of the perjury.

In support of their position, defendants cite a line of authority concerning the trial of conspiracy cases—principally that of *Lutwak v. United States* (1953), 344 U.S. 604, 97 L. Ed. 593, 73 S. Ct. 481, where the court stated that declarations by a conspirator not made in the presence of a co-conspirator but in furtherance of a conspiracy are admissible as an exception to the hearsay rule against the co-conspirator to show participation in the conspiracy (see also *People v. Simpson* (1976), 39 Ill. App. 3d 318, 349 N.E.2d 441), but that after the conspiracy had ended, such declarations are inadmissible against a co-conspirator as hearsay, and the trial court—by instruction to the jury—should limit the admission of such statements to the declarant at the time the evidence is admitted (*People v. Davis* (1970), 46 Ill. 2d 554, 264 N.E.2d 140).

■■ We note, however, that in *United States v. Fellabaum*, 408 F.2d 220 (7th Cir. 1969), *cert. denied*, 396 U.S. 818, it was held that when the post-conspiracy statement by one codefendant does not directly inculpate another, no error of constitutional magnitude arises in failing to give an immediate limited instruction. Also, in *United States v. Campanale* (9th Cir. 1975), 518 F.2d 352, *cert. denied, Grancich v. United States*, 44 U.S.L.W. 3397, the court concluded that prejudicial error did not occur when the trial court did not give cautionary instructions to the jury at the time statements by co-conspirators were admitted, because the matter was covered in instructions given at the conclusion of trial.

■■ In the present case, the cautionary instruction was offered when

Galvan rested his case, and the court properly refused it at that time because there was no showing nor any attempt to show what evidence was expected. If the court had given the instruction then, it might have precluded evidence that the jury should properly have considered. It appears also that when all three defendants had rested their cases, the attorney for Galvan and Barrera again requested a similar cautionary or limiting instruction prior to the State's rebuttal testimony. Here also there was no showing nor attempt to show what rebuttal was expected, and the court properly refused the instruction.

■■ Again, during the rebuttal testimony of the assistant State's Attorney and the surrebuttal testimony of a witness called by Soto, similar requests for a cautionary instruction were made and, while the court might have given such a limiting instruction at these times, we do not believe under the circumstances here that reversible error resulted from the refusal to give it. The testimony of Rodriguez did not implicate either defendant, and his recantation indicated that only Soto had been involved in the matter. Soto's case was obviously weakened; but, because the alibis of defendants were disassociated from that of Soto, we cannot agree, as defendants argue, that the failure to give a limiting instruction caused the jury to attribute Soto's falsehoods to defendant. Further, we note that at the close of all the evidence an instruction was given, apparently at the request of Soto, which in substance told the jury to give separate consideration to each defendant and to decide the case of each on the evidence and the law applicable to them. Applying the rationale of *Campanale*, it appears to us that prejudicial error did not occur here from the court's refusal to give cautionary instructions during trial. (See also *People v. Van Riper* (1970), 127 Ill. App. 2d 394, 262 N.E.2d 141.) Moreover, if a more precise limiting instruction was desired at the conclusion of trial, defense counsel should have submitted it for the court's consideration. See *People v. Meeks* (1973), 11 Ill. App. 3d 973, 297 N.E.2d 705.

■■ Defendants have also urged that in the State's rebuttal argument to the jury, three instances occurred when the State improperly referred to the perjured testimony as applicable to all the accused. We have examined these comments and find that in two instances such interpretation is not warranted. The remaining reference concerned the Rodriguez testimony, when the prosecutor said that to acquit "them," the jury would have to believe Rodriguez's initial version. The complete comment referred in detail to Rodriguez's lack of credibility because he had been impeached by his employment records. When viewed in the context of the entire statement, this comment appears inconsequential. In any case, no objection was made to any of these references, either during argument or in defendants' written post-trial motion, and any error may

be deemed waived. *People v. Edwards* (1973), 55 Ill. 2d 25, 302 N.E.2d 306; *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.

■■ While no contention is directly made challenging the convictions for conspiracy to commit aggravated kidnapping, we find that these convictions must be reversed and the cause remanded. The indictment charged defendants and Soto with conspiracy to commit the offense of aggravated kidnapping. However, the jury instructions submitted on the conspiracy charge, without objection by defense counsel, were phrased in the terms of a conspiracy to commit rape—with no mention of any element of the crime of conspiracy to commit aggravated kidnapping. A jury must be instructed on the offense charged (*People v. Phipps* (1930), 338 Ill. 373, 170 N.E. 305; *People v. Worsham* (1975), 26 Ill. App. 3d 767, 326 N.E.2d 134; Callahan's Illinois Criminal Procedure §34.70 (1971)) and, although no objection was made to the conspiracy instructions, we believe that the jury was improperly instructed and, in the interest of justice, we think the doctrine of waiver should not be applied in this instance. See *Worsham; People v. Robinson* (1974), 21 Ill. App. 3d 343, 315 N.E.2d 95.

For the reasons stated, the judgment is affirmed as to the convictions of defendants for rape and the sentences therefor, but is reversed as to the conspiracy convictions and the sentences therefor, and this cause is remanded for new trial on the conspiracy charges.

Affirmed in part.

Reversed in part and remanded for further proceedings.

LORENZ, P. J., and BARRETT, J., concur.