Third Division 

December 18, 2002 

Nos. 1-00-1603 & 1-00-2701 cons.

THE PEOPLE OF THE STATE ) Appeal from the

OF ILLINOIS, ) Circuit Court of

) Cook County 

Plaintiff-Appellee ) 

)

v. ) No. 99C6-61058-01

) THERON BRADLEY,                     ) Honorable 

 ) George M. Morrissey

Defendant-Appellant.   ) Judge Presiding.

JUSTICE HALL delivered the opinion of the court:

On February 29, 2000, following a bench trial, defendant Theron Bradley, also known as Big Ron, was convicted of aggravated battery with a firearm and armed robbery of Larry Woods.  On April 11, 2000, defendant was sentenced to 15 years' imprisonment for aggravated battery and 6 years' imprisonment for armed robbery, the sentences to be served consecutively.  On May 10, 2000, defendant filed his notice of appeal.  On May 15, 2000, defendant filed a motion to reduce his sentence, which the trial court denied on August 3, 2000.  This consolidated appeal followed.

On appeal, defendant contends that: (1) the trial court erred by improperly admitting Detective Daniel Dempsey's testimony regarding Larry Woods' out-of-court statement identifying defendant as the individual who shot him; (2) the trial court erred by improperly considering facts not in evidence in finding defendant guilty of aggravated battery and armed robbery; and (3) the trial court erred in ordering that the sentences imposed for aggravated battery and armed robbery be served consecutively.  For the reasons that follow, we affirm.

FACTUAL BACKGROUND

Defendant's conviction arose from the nonfatal shooting and armed robbery of Larry Woods on May 27, 1999, at approximately 3 a.m., near 137th and Parnell Avenue, in Riverdale, Illinois.  Woods, a known drug dealer and member of the same street gang as defendant, testified that on May 27, 1999, at about 3 a.m. he was at the home of his friend, Laquita Franklin, when he got into an argument with the defendant over drugs and "gang[-]related things."  After the argument ended, Woods left Ms. Franklin's home and proceeded to walk up the street.

As Woods was walking up the street away from the home, he heard defendant call his name.  Woods testified that defendant asked him to "come here for a minute."  Woods testified that when he stopped and turned around toward defendant, he saw defendant approaching him.  Defendant was wearing gloves and was pulling a handgun from his behind his back.  Woods was unarmed.

Defendant approached within approximately four feet of Woods, pointed his handgun at Woods and ordered him to "Give me your sh-t."  Woods testified that he understood that defendant was referring to the illegal drugs that Woods had in his possession.  Defendant fired a gunshot at the ground when Woods hesitated in turning over his drugs.  Woods then threw his plastic bag of crack cocaine to the defendant.  Defendant retrieved the bag of drugs, told Woods, "Man, I told you about playing with me," and then shot Woods once in the leg, shattering his femur.

Woods testified that after he was shot he ran across the street, but his leg "gave out" and he fell to the ground.  As he was lying on the ground, Woods called out to the defendant, "Big Ron, don't leave me. Don't leave me out here."  Defendant then crossed the street after Woods.  Upon reaching Woods, defendant took approximately $40 in cash from Woods' pocket and told Woods, "Don't call my name."  Woods testified that defendant threatened to shoot him again if he continued to call out defendant's name.

Woods eventually knocked on a nearby resident's window, and the resident called 911.  Police officers arrived along with an ambulance, which transported Woods to Christ Hospital, where he received treatment for his gunshot wound.

Detective Daniel Dempsey testified that he arrived at the scene of the shooting at approximately 4 a.m., about an hour after the incident.  He testified that when he arrived at the scene, Woods had already been taken to Christ Hospital.  While at the scene, Detective Dempsey spoke with Officers Fionda and Graziano regarding the conversation they had with Woods prior to his removal to Christ Hospital.

Detective Dempsey then prepared a photo array based on the information that police officers Fionda and Graziano told him they received from Woods.  Later, the same day of the shooting, Detective Dempsey took the array of photos to Christ Hospital and showed them to Woods.  Detective Dempsey testified that Woods, upon examining the photo array, identified defendant as the individual who shot him.

ANALYSIS

I. Hearsay Identification Testimony 

Defendant first contends that the trial court erred by admitting Detective Dempsey's testimony regarding Woods' out-of-court statement identifying defendant as the individual who shot him in the leg.  Defendant requests that we consider the merits of this contention under the plain error rule, on the ground that the evidence in the case was closely balanced.

The State responds that defendant waived his hearsay argument and that the evidence was not so closely balanced as to warrant a plain error review.  The State maintains, however, that if this court determines that defendant did not waive his hearsay argument, we should find, as the trial court did, that Woods' out-of-court statement identifying defendant as his assailant was properly admissible under the "excited utterance" exception to the hearsay rule.  Further, the State contends that Detective Dempsey's testimony regarding Woods' out-of-court statement of identification was also properly admissible pursuant to section 115-12 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-12 (West 1996)), which pertains to the admissibility of an out-of-court statement of prior identification.  Lastly, the State contends that even if we conclude that the trial court erred in admitting Detective Dempsey's objected to testimony, we should find that the error was harmless, since the trial court had independent evidence from which it concluded that Woods properly identified defendant as his assailant.

In order to preserve an issue for appellate review, a defendant must make a timely objection at trial and include the ground for objection in a written posttrial motion. 
People v. Enoch
, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988).  Since the record indicates that defendant failed to raise the issue of the admissibility of Detective Dempsey's testimony regarding Woods' out-of-court statement of identification in his posttrial motion, defendant has waived this issue for appeal.  However, as previously mentioned, defendant requests that we consider the merits of the issue under the plain error rule, on the ground that the evidence was closely balanced.

To apply the plain error exception to the waiver rule, courts should first determine if the record shows that an error occurred.  If not, end of story.  If so, then courts should consider whether the error was plain error. 
People v. Precup
, 73 Ill. 2d 7, 17, 382 N.E.2d 227 (1978).  This criterion is met in criminal cases under two limited circumstances
: (1) where the evidence is closely balanced and the error might have significantly affected the outcome of the case; or (2) where the error is so fundamental and of such magnitude that the accused was denied a fair trial and remedying the error is necessary to preserve the integrity of the judicial process. 
People v. Young
, 128 Ill. 2d 1, 47, 538 N.E.2d 461 (1989); 
People v. Sanders
, 99 Ill. 2d 262, 273, 457 N.E.2d 1241 (1983); see 134 Ill. 2d R. 615(a)
(footnote: 1).  If it is not plain error, end of story -- error is waived.  If it is plain error, then courts can consider whether the error was reversible or not.

In the present case, the trial court erred in admitting Detective Dempsey's testimony regarding Woods' out-of-court statement under the "excited utterance" exception to the hearsay rule.  However, this error is not reviewable under the plain error doctrine because an examination of the record reveals that the evidence was not close nor was the error of such magnitude as to preclude defendant from receiving a fair trial.  The evidence showed that prior to the incident, Woods and defendant had known each other for approximately four months through their mutual membership in a street gang.  Woods testified that defendant shot him in the leg shortly after they engaged in an argument over illegal drugs and "gang[-]related things."  Based on the properly admitted evidence, the trial court stated that Woods' identification of defendant as his assailant was not an issue in the case.  Therefore, we must reject defendant's contention that the evidence regarding Woods' identification of defendant as his assailant, was closely balanced.  And thus, the trial court's error in admitting Detective Dempsey's testimony regarding Woods' out-of-court statement of identification under the "excited utterance" exception to the hearsay rule did not rise to the level of plain error and is not reviewable under the plain error doctrine.  Moreover, even if we reviewed the error under the doctrine of plain error, we would hold that the error was harmless under the circumstances in this case.  

A. Excited Utterance Exception to Hearsay Rule     

The classical rationale underlying the spontaneous declaration or excited utterance exception to the hearsay rule was summarized in Wigmore on Evidence as follows:

"This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock.  Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or at least as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts." 6 J. Wigmore, Evidence §1747, at 195 (Chadbourn rev. ed. 1976).

In order for a hearsay statement to be admissible under the spontaneous declaration or excited utterance exception to the hearsay rule, the evidence must demonstrate: (1) the occurrence of an event or condition sufficiently startling to produce a spontaneous and unreflecting statement; (2) the absence of time to fabricate; and (3) that the statement relates to circumstances of the occurrence. 
People v. Williams
, 193 Ill. 2d 306, 352, 739 N.E.2d 455 (2000).  Factors used by courts to determine whether the declarant’s statement was in fact spontaneous, excited and unreflecting include the period of time between the event and the utterance, the nature of the event, the declarant’s mental and physical condition, and the presence or absence of self-interest. 
People v. House
, 141 Ill. 2d 323, 381-82, 566 N.E.2d 259 (1990); 
People v. Georgakapoulos
, 303 Ill. App. 3d 1001, 1012, 708 N.E.2d 1196 (1999).  No one factor is determinative and each case rests on its own facts and is judged by the totality of the circumstances surrounding the event. 
People v. Pitts
, 299 Ill. App. 3d 469, 477, 701 N.E.2d 198 (1998).

After examining the totality of the circumstances in this case, we are not convinced that the statement in question was an excited utterance.  The record shows that Woods' statement was made in response to viewing an array of photographs that purportedly included the photograph of the man who allegedly shot him.  However, by the time Detective Dempsey showed the photo array to Woods at Christ Hospital, Woods had been receiving treatment for the gunshot wound to his leg for a number of hours.  There is no evidence in the record showing that Woods was in a state of excitement when he viewed the photo array or when the statement in question was made. See 
People v. Jackson
, 26 Ill. App. 3d 618, 627, 325 N.E.2d 450 (1975) (concluding that testimony regarding out-of-court statement made by victim's four-year-old granddaughter was not properly admissible under excited utterance exception to hearsay rule where at least two hours elapsed between the time of incident and statement and where there was no evidence showing that the child was in state of excitement when she made the statement).

Moreover, it has been held that a victim's statement made in response to viewing an alleged offender's photograph is generally not the type of startling event that causes an excited utterance under the hearsay rule. See
 People v. Durham
, 312 Ill. App. 3d 413, 417, 727 N.E.2d 623 (2000).  Therefore, as in 
Durham
, under the totality of the circumstances in this case, Woods viewing defendant's photograph was not startling enough to cause an excited utterance under the hearsay rule.

B. Harmless Error

The trial court's error in finding that Woods' out-of-court statement was admissible as an excited utterance or spontaneous declaration was harmless, in view of the fact that the court had independent evidence from which it concluded that Woods properly identified defendant as his assailant.  The admission of hearsay identification testimony constitutes plain error only where it serves as a substitute for courtroom identification or is used to strengthen and corroborate a weak identification. 
People v. Armstead
, 322 Ill. App. 3d 1, 12, 748 N.E.2d 691 (2001).  If the hearsay testimony is cumulative or is supported by a positive identification and other corroborative circumstances, then its admission constitutes harmless error. 
Armstead
, 322 Ill. App. 3d at 12.  An error is harmless where a reviewing court can safely conclude that a trial without the error would produce no different result. 
People v. Dunn
, 326 Ill. App. 3d 281, 287, 760 N.E.2d 511 (2001); 
People v. Tucker
, 317 Ill. App. 3d 233, 243, 738 N.E.2d 1023 (2000).  In the present case, a trial conducted without Detective Dempsey's testimony regarding Woods' out-of-court statement would not have produced a different result because the trial court had independent evidence from which it concluded that Woods properly identified defendant as the individual who shot him.

The evidence showed that Woods and defendant knew each other through their mutual membership in a street gang.  Woods testified that defendant shot him in the leg shortly after they engaged in an argument over illegal drugs and gang-related issues.  The trial court indicated that Woods' identification of defendant as his assailant was clearly not an issue in the case when the court stated:

"[R]egarding the identification of Mr. Woods and [defendant], it appears as though there isn't any question about identification. [Defendant] is not a stranger, he's somebody [Woods] has known for three or four months he testified.  They've been related in this neighborhood group, and that's what caused the relationship."  

Therefore, the trial court's error in admitting Detective Dempsey's testimony regarding Woods' out-of-court statement identifying defendant as his assailant under the "excited utterance" exception to the hearsay rule was harmless, where there was properly admitted evidence showing that Woods identified defendant as the individual who shot him.

C. Section 115-12 of the Code of Criminal Procedure 

Woods' out-of-court statement of identification was not admissible under section 115-12 of the Code.  Pursuant to section 115-12, testimony regarding a declarant's prior out-of-court statement of identification is not rendered inadmissible by the hearsay rule if: "(a) the declarant testifies at the trial or hearing, and (b) the declarant is subject to cross-examination concerning the statement, and (c) the statement is one of identification of a person made after perceiving him." 725 ILCS 5/115-12 (West 1996).

In the present case, Detective Dempsey's testimony regarding  Woods' out-of-court statement was not admissible under section 115-12 of the Code, because Detective Dempsey gave this testimony before Woods testified about the statement and before Woods was subject to cross-examination concerning the statement.  Before a third person is permitted to testify as to a witness's out-of-court statement of identification, the witness must first testify as to the out-of-court identification. 
People v. Rogers
, 81 Ill. 2d 571, 579, 411 N.E.2d 223 (1980); 
People v. Green
, 204 Ill. App. 3d 461, 465, 563 N.E.2d 61 (1990).  Here, the record shows that due to the unavailability of the photo array on the first day of trial, Woods did not give testimony regarding his identification of defendant in the photo array.  We must reject the State's contention that section 115-12 of the Code was satisfied on the ground that Woods could have been examined on the second day of trial regarding the photo-array identification.  When a declarant like Woods testifies but fails to give testimony concerning his out-of-court statement of identification, it is inadmissible hearsay for a third party like Detective Dempsey to testify that the declarant made the out-of-court statement of identification. See 
People v. Ford
, 21 Ill. App. 3d 242, 244-45, 315 N.E.2d 87 (1974) (concluding that police officer's testimony that complainant picked out a photograph of defendant from a photo array was inadmissible hearsay, where the complainant did not first testify as to her prior identification).  
Here, Detective Dempsey gave testimony regarding Woods' out-of-court statement before Woods gave testimony as to the statement and before he was subject to cross-examination concerning the statement.  Consequently, under the rationale of 
Rogers
, 
Green
 and 
Ford
, Detective Dempsey's testimony regarding Woods' out-of-court statement was not admissible under section 115-12 of the Code.

II. Competent Evidence

Defendant next contends that the trial court erred by considering incompetent evidence to convict him.  Specifically, defendant claims that the trial court improperly considered the statement Woods made to responding officers wherein he identified defendant as his assailant.  Defendant's contention is based on the following colloquy which occurred during the prosecutor's direct examination of Detective Dempsey:

"[Prosecutor]: Well, [detective], did Officer Fionda and Officer Graziano have a conversation with the shooting victim when they arrived at that location?     

[Defense Counsel]: Objection.

The Court: Overruled.

[Witness]: Yes, they did.

[Prosecutor]: And did this Officer Fionda and Officer--did they say that the shooting victim named anyone who shot him?

[Defense Counsel]: Objection, Judge.

The Court: Sustained.

***

[Prosecutor]: When Officer Fionda and Officer Graziano arrived at that location, did Mr. Woods tell them who shot him?

[Defense Counsel]: Objection.

The Court: Sustained.

***

[Prosecutor]: Now, [detective], did Officer Graziano and Fionda have a conversation with Mr. Woods at that time once they responded to the location?

[Witness]: Yes.

[Prosecutor]: And as it relates to who shot Mr. Woods, did he tell those officers a name?

[Defense Counsel]: Objection. 

The Court: Sustained.

Defendant asserts that despite the trial court's rulings sustaining defense counsel's objections, the court nevertheless committed error by considering Woods' statement of identification to responding officers Fionda and Graziano.  Defendant argues that Woods' statement to responding police officers Fionda and Graziano identifying defendant as his assailant was not in evidence, but that the trial court nonetheless used this evidence to convict him and therefore he was denied a fair trial.  We cannot agree with defendant's contention.

The record shows that in its findings, the trial court made the following single reference regarding the statement Woods made to responding police officers concerning his identification of defendant:

The Court: When the Officers arrived on the scene, [Woods] immediately identified the shooter as Big Ron, Big Ron is [defendant]."

In the present case, the trial court's single reference to Woods' statement does not constitute reversible error.  A trial court's mere reference to incompetent evidence is not sufficient to warrant reversal. 
People
 
v. Johnson
, 327 Ill. App. 3d 203, 211, 762 N.E.2d 615 (2001).  In addition, when incompetent evidence is introduced in a case, the error is harmless where there is sufficient testimonial evidence of defendant's guilt.
 Johnson
, 327 Ill. App. 3d at 211.

Here, there was sufficient testimonial evidence of defendant's guilt.  Woods testified that at the time of the shooting, he and defendant had known each other for approximately four months through their mutual membership in a street gang.  In court, Woods referred to defendant by his nickname "Big Ron," and he identified defendant, in court, as the person who shot him in the leg and robbed him of his money and illegal drugs on May 27, 1999.  Woods testified that defendant shot him in the leg shortly after they argued over illegal drugs and gang-related issues.  The argument occurred in the home of Laquita Franklin, who was a common friend of Woods and defendant.  Therefore, even if the trial court erred by making a single reference to incompetent evidence in its findings, the error was harmless.

III. Consecutive Sentences

Defendant finally contends that the trial court improperly imposed consecutive sentences under section 5-8-4(b) of the Unified Code of Corrections (730 ILCS 5/5-8-4(b) (West 1994)), when the court determined that the aggravated battery and armed robbery were not committed as part of a single course of conduct and that there was substantial change in the nature of the criminal objective.  Defendant also contends that the trial court's imposition of consecutive sentences pursuant to section 5-8-4(b) of the Unified Code of Corrections, should be vacated in accordance with 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed.2d 435, 120 S. Ct. 2348 (2000).

The State responds that defendant waived review of these sentencing issues because he failed to raise them in a postsentencing motion.  The State further contends that, waiver aside, 
Apprendi
 is not violated by the imposition of consecutive sentences where each separate sentence is within the applicable statutory limit for the particular offense.

Contrary to the State's waiver argument, defendant did not waive the issues pertaining to the trial court's imposition of consecutive sentences.  Sentencing issues are excepted from the doctrine of waiver when they affect a defendant's substantial rights. 
People v. Brials
, 315 Ill. App. 3d 162, 170, 732 N.E.2d 1109 (2000).  The right to be lawfully sentenced is a substantial right. 
People v. Sample
, 326 Ill. App. 3d 914, 925, 761 N.E.2d 1199 (2001).  A trial court's imposition of a consecutive sentence that is not authorized by statute is void, and therefore, may be challenged at any time. 
People v. Wilder
, 325 Ill. App. 3d 987, 996, 760 N.E.2d 496 (2001).  Accordingly, we choose to consider the issues pertaining to the trial court's imposition of consecutive sentences.

A. Consecutive Sentences - 
Apprendi

Defendant claims that the consecutive sentencing provision of section 5-8-4(b) of the Unified Code of Corrections violates his rights to due process and trial by jury.  In support of this argument, defendant relies on the United State's Supreme Court decision in 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).  We must disagree with defendant's contention.

Our supreme court has held that 
Apprendi 
concerns are not implicated by consecutive sentencing under either section 5-8-4(a) (
People v. Carney
, 196 Ill. 2d 518, 531-32, 752 N.E.2d 1137 (2001)) or section 5-8-4(b) (
People v. Wagener
, 196 Ill. 2d 269, 282, 752 N.E.2d 430 (2001)).  Accordingly, defendant's consecutive sentences under section 5-8-4(b) of the Unified Code of Corrections are constitutional.

B. Consecutive Sentences - Single Course of Conduct

At the time of the instant offenses, section 5-8-4 of the Unified Code of Corrections provided in relevant part:

"(a) *** The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, or where the defendant was convicted of a violation of Section 12-13 [criminal sexual assault], 12-14 [aggravated criminal sexual assault], or 12-14.1 [predatory criminal sexual assault of a child] of the Criminal Code of 1961, in which event the court shall enter sentences to run consecutively.  Sentences shall run concurrently unless otherwise specified by the court.

(b) The court shall not impose a consecutive sentence except as provided for in subsection (a) unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." 730 ILCS 5/5-8-4(a),(b) (West 1994).

In the present case, the imposition of consecutive sentences was not improper.  The trial court imposed consecutive sentences under section 5-8-4(b) of the Unified Code of Corrections after the court determined that defendant's offenses were not committed in a single course of conduct and that consecutive sentences were necessary to protect the public.  Effective July 22, 1997, section 5-8-4(b) of the Unified Code of Corrections was amended to require mandatory consecutive sentences for triggering offenses that were not committed in a single course of conduct. 730 ILCS 5/5-8-4(b) (West 1994 & Supp. 1997); 
People ex rel. Waller v. McKoski
, 195 Ill. 2d 393, 398-401, 748 N.E.2d 175 (2001); 
People v. Sergeant
, 326 Ill. App. 3d 974, 991, 762 N.E.2d 518 (2001).  The triggering offenses enumerated in section 5-8-4(b) are identical to those set forth in section 5-8-4(a).  Thus, the 1997 amendment had the practical effect of requiring consecutive sentences on all triggering offenses, whether they were committed in a single course of conduct or separate courses of conduct. 
Sergeant
, 326 Ill. App. 3d at 991; 
People v. Carney
, 327 Ill. App. 3d 998, 1001, 765 N.E.2d 1028 (2002).  Here, defendant committed aggravated battery with a firearm and armed robbery of Woods.  Aggravated battery with a firearm and armed robbery are both Class X felonies that trigger consecutive sentences under section 5-8-4(b) and defendant's conduct in committing the aggravated battery with a firearm resulted in severe bodily injury to Woods
(footnote: 2).  Therefore, the imposition of consecutive sentences was not improper in this case.

Accordingly, for the reasons set forth above, the judgments of the circuit court of Cook County are affirmed.

Affirmed.

SOUTH, P.J., and WOLFSON, J., concur.

FOOTNOTES
1: Supreme Court Rule 615(a) provides:

"Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.  Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." 134 Ill. 2d R. 615(a).

2: Woods testified that the bullet defendant shot him with shattered a bone in his leg requiring him to get a rod implant from his waist to his knee.