THIRD DIVISION

DECEMBER 28, 2005

1-04-0381

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the 

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

v. ) No. 02 CR 11746

)

KAREEM MILLER, ) Honorable

) Kenneth J. Wadas,

Defendant-Appellant. ) Judge Presiding.

JUSTICE ERICKSON delivered the opinion of the court:

Following a jury trial, defendant Kareem Miller was convicted of attempted first degree murder and sentenced to 25 years in prison.  On appeal, defendant contends the trial court erred in: (1) allowing the State to use a police officer's impeachment testimony substantively, and in failing to promptly instruct the jury that the testimony could not be used substantively; (2) allowing a police officer to testify that an eyewitness identified defendant as the shooter; and (3) admitting an assistant State's Attorney's testimony into evidence to perfect an impeachment.  Defendant also claims that the mittimus must be amended to reflect the correct credit for time he served in custody prior to sentencing. 

BACKGROUND

The victim, Ladrakegus Easley, testified that at approximately 7:30 a.m. on March 25, 2002, he left his apartment to buy a newspaper.  On his way to the store, he saw his friend Murray Harris drive by and asked him if he wanted to smoke some marijuana.  The two men bought some cigars to make "blunts" at a gas station.  They smoked two "blunts" for about 25 to 30 minutes.  Thereafter, Harris dropped Easley off at his apartment.  

When Easley arrived at his apartment, he realized that he had forgotten the newspaper.  After picking up the newspaper at a nearby gas station, Easley walked through a gangway on his way back to his apartment.  When Easley returned to the porch, he heard someone call his name.  He turned around and saw defendant, whom he knew as "Stalker."  He had a conversation with "Stalker" for two to three minutes.  After the conversation, Easley turned to leave.  As he began walking away, he heard loud gunshots and felt a sharp piercing pain as he fell to the ground.  Easley stated that he saw "Stalker" fire a 9-millimeter automatic handgun at his head, legs, arms, and body.  "Stalker" then ran through a vacant lot across the street.  Easley stated that his vision was not impaired by the marijuana, that he remained conscious, and that he never lost sight of "Stalker." 

After he was shot, Easley said the first person he saw was his neighbor John Bailey.  At trial, Bailey testified that he looked out of his window after hearing gunshots and saw Easley's body lying on the ground.  He ran out to help Easley.  When the police arrived, they directed Bailey to ask Easley who shot him.  Bailey stated that Easley replied that "Stalker" had shot him.

Easley's girlfriend, Renesha Lightning, also came to his aid after he was shot.  She testified that she lived with Easley.  At about 7:30 a.m., Easley got out of bed and went outside.  He returned about 30 to 45 minutes later.  Upon returning, he kissed her and told her that he was going outside again to get a newspaper.  After Easley left, Lightning heard gunshots and people saying Easley had been shot.  When she went outside to aid Easley, the police were already at the scene.  She testified that she asked him who had shot him, and he replied "Stalker shot me, Stalker shot me."  She said she knew who "Stalker" was and identified him in a lineup on April 18, 2002.   

Harris, a convicted felon, testified that he had known Easley for about 12 or 13 years.  He stated that they were partners in a drug dealing business.  On the morning of the shooting, he testified that he picked up Easley to "bag" drugs while smoking marijuana "blunts" laced with PCP.  At around 7:30 a.m., he drove Easley home and they planned to meet at their usual place to sell drugs.  Easley was supposed to bring the drugs.  Ten minutes later, a man named "Spider" approached him and asked for Easley's whereabouts.  When Easley arrived, the three men had a short conversation.  "Spider" then pulled out a gun and began shooting Easley.  After the shooting, Harris went to the liquor store to call an ambulance.  He then returned to the crime scene, took the drugs out of Easley's pockets, and left the scene when the police arrived.  

Later that morning, the police took Harris into custody for questioning.  At the police station, Detective Golden and Detective Ditryk questioned Harris, but Harris denied telling them anything.  The State impeached Harris with his signed investigation summary taken by defense counsel's private investigator.  In the investigation summary, the investigator reviewed with Harris a summary of his interview with the police indicating Harris admitted speaking to the police about the shooting.  After Harris was impeached, he admitted that he previously spoke to the detectives.  Harris stated that he told the detectives that he saw someone shoot Easley 10 times with a 9-millimeter handgun, but he did not know who shot him.  He denied telling the detectives that "Stalker" shot Easley.  Harris acknowledged that he had known defendant for eight years and that he visited him in jail while awaiting trial in this case.  Harris also acknowledged that the police showed him a photo array during questioning on the day of the shooting.  He testified that although he saw defendant's picture in the photo array, he did not identify defendant as the shooter. 

After Harris's testimony, the State called Detective Golden to testify.  At this time, defense counsel asked the court to instruct the jury that Golden's testimony could be considered for impeachment purposes only.  After hearing arguments from both parties, the court determined that portions of Golden's testimony were substantively admissible as prior identification testimony pursuant to section 115-12 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-12 (West 2002)) (section 115-12), while other portions were admissible for impeachment purposes only.  The court then denied defendant's request stating that it did not want to anticipate Golden's testimony and would not parse out his anticipated testimony to determine which portions could be admitted as substantive evidence and which portions could be admitted as impeachment evidence at that time.  Instead, it chose to instruct the jury at the end of the trial.

Detective Golden testified that he interviewed Harris on March 25, 2002.  Harris told him that he and Easley were driving around in his car.  He later dropped Easley off at his apartment.  Golden stated that Harris and Easley had planned to meet at 100th Place.  When Harris arrived at that location, he told Golden that he saw Easley talking to an individual.  Harris overheard the individual say "you're going to close me down" to Easley as he shot him.  Golden testified that the shooter ran past Harris and that Harris recognized the shooter as "Stalker."  

Detective Golden then ran a search on the name "Stalker" in the police department's database and located defendant.  Golden also testified that Harris said that something must have happened in the previous 48 hours because Harris and defendant had been "tight" before that, and that it may have had something to do with "drug relations."  After defense counsel objected to this testimony, the court instructed the jury to disregard the allegations of drug dealing.  Golden also stated that Harris picked out defendant from a photo array.

Assistant State's Attorney Garcia testified that on April 19, 2002, he drove to Logan Correctional Center with Detectives Golden and Ditryk to interview Harris, who was in custody for an unrelated offense.  Garcia stated that Harris acknowledged previously speaking to the detectives.  Harris also acknowledged that he was shown photographs and that he picked out a photograph.  Harris then refused to further speak to Garcia and terminated the interview.

Following numerous stipulations regarding bullet casings found on the scene, the State rested.  Defendant moved for a directed finding.  After the court denied the motion, defendant rested.  The parties proceeded to closing arguments, where the State 
inter
 
alia
, addressed Harris's testimony.  Defense counsel, in closing, also addressed Harris's testimony and explained to the jury the difference between substantive evidence and impeachment evidence.  The trial court then instructed the jury, over defense counsel's objection, pursuant to Illinois Pattern Jury Instructions, Criminal, No. 3.11 (4th ed. 2000) (IPI 3.11).   

Following deliberations, the jury found defendant guilty of attempted first degree murder and aggravated battery.  The court merged defendant's convictions and sentenced him to 25 years' imprisonment.

ANALYSIS

I

We first address defendant's contention that his sixth amendment right of confrontation was violated.  Defendant, relying on 
Crawford v. Washington
, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004) (
Crawford
), contends that he was denied a fair trial because the trial court allowed the State to enter Harris's prior identification of defendant as the shooter substantively when Harris consistently denied making the prior statement at trial.  Defendant argues that because Harris denied making any prior identification, defense counsel was "unable to effectively cross-examine him regarding these statements."

The State responds that because defendant did not raise the alleged errors in his motion for a  new trial, they are waived for purposes of appeal. 
 To preserve an issue for review, defendant must both object at trial and specifically include the objection in a post-trial motion.  
People v. Allen
, 344 Ill. App. 3d 949, 954, 801 N.E.2d 1115 (2003).  A reviewing court may invoke the plain error doctrine and review alleged errors not properly preserved when (1) the evidence is so closely balanced "that the error alone severely threatened to tip the scales of justice against [the defendant]," or (2) the error is so fundamental and of such magnitude the accused is denied the right to a fair trial and remedying the error is necessary to preserve the integrity of the judicial process.  
People v. Herron
, 215 Ill. 2d 167, 186-87, 830 N.E.2d 467 (2005); 134 Ill. 2d R. 615(a). 

We reject the State's contention that defendant has waived this issue for purposes of appeal.  
Crawford
 was decided subsequent to defendant's trial, and has been held to apply retroactively to cases such as this one, pending on direct appeal.  
People v. Martinez
, 348 Ill. App. 3d 521, 533, 810 N.E.2d 199 (2004) (
Martinez
). 
 Moreover, as this matter bears on defendant's right to a fair trial, it is subject to plain error review.  
Martinez
, 348 Ill. App. 3d at 532.
  We therefore address the merits of defendant's contention.

Section 115-12 provides that a witness's prior identification is substantively admissible when (1) the declarant testifies at the trial or hearing, (2) the declarant is subject to cross-examination concerning the statement, and (3) the statement is one of identification of a person after perceiving him.  725 ILCS 5/115-12 (West 2002).  In a recent opinion by the Fourth District in 
People v. Lewis
, No. 4-04-0547, slip op. at 7 (November 10, 2005) (
Lewis
), the court discussed section 115-12, 
People v. Stackhouse
, 354 Ill. App. 3d 265, 820 N.E.2d 1027 (2004) (
Stackhouse
), and 
People v. Bradley
, 336 Ill. App. 3d 62, 782 N.E.2d 825 (2002) (
Bradley
).  The 
Lewis
 court found that the 
Stackhouse
 and 
Bradley
 opinions were wrongly decided and declined to follow them.  We find 
Lewis
 to be instructive.

In 
Bradley
, the victim did not testify about his prior identification of defendant in a photo array to the detective because the photo array was not available on the first day of trial.  On the second day of trial, instead of recalling the victim to the stand, the State called the detective to testify that the victim previously identified the defendant in a photo array as the assailant.  
Bradley
, 336 Ill. App. 3d at 70.  The 
Bradley
 court held that under section 115-12 "[b]efore a third person is permitted to testify as to a witness's out-of-court statement of identification, the witness must first testify as to the out-of-court identification."  
Bradley
, 336 Ill. App. 3d at 70.

In
 
Stackhouse
, the victim testified that he did not see the male offender as he was hit from behind.  Shortly after the offense, a police officer arrived and took him across the street to a parking lot.  The victim testified that he recognized the woman as the person who robbed him, but he could not identify the man.  
Stackhouse
, 354 Ill. App. 3d at 267-68.  Subsequently, the police officer testified that the victim identified both defendants in the parking lot.  
Stackhouse
, 354 Ill. App. 3d at 269.  The 
Stackhouse
 court, adhering to 
Bradley
, found that section 115-12 requires "the declarant to testify and be subject to cross-examination regarding the out-of-court identification statement 
before
 a third party may testify to the making of such a prior statement of identification by the declarant." (Emphasis in original.)  
Stackhouse
, 354 Ill. App. 3d at 278.

The court in 
Lewis
 found that these holdings amend section 115-12 by adding a requirement that before a third party can testify regarding a witness's out-of-court statement of identification, that witness must first testify and be subject to cross-examination.  
Lewis
,, slip op. at 8.  Section 115-12, as written, does not demand this prerequisite.  A review of learned treatises on this issue shows a near unanimous agreement among scholars.
(footnote: 1)  The judiciary cannot, under the guise of statutory interpretation, amend the statute to depart from the language written by the legislature.  
Lewis
, slip op. at 9, quoting 
Cement Masons Pension Fund, Local 803 v. William A. Randolph, Inc.
, 358 Ill. App. 3d 638, 645, 832 N.E.2d 228 (2005).  We find 
Lewis
 to be persuasive and hold that, in this case, the trial court properly admitted Detective Golden's testimony substantively regarding Harris's prior identification of defendant as section 115-12 did not require Harris to first testify and be subject to cross-examination regarding his out-of-court identification statement prior to Golden's testimony. 

In 
Crawford
, the defendant was on trial for assault and attempted murder after a man allegedly attempted to rape his wife.  
Crawford
, 541 U.S. at 38, 158 L. Ed. 2d at 184, 124 S. Ct. at 1356.  At trial, the State entered the defendant's wife's recorded statement to the police as she did not testify because the defendant asserted his marital privilege.  
Crawford
, 541 U.S. at 40, 158 L. Ed. 2d at 185, 124 S. Ct. at 1357.  The United States Supreme Court ruled that the confrontation clause of the sixth amendment admits out-of-court testimonial statements, offered for the truth, only if the declarant is unavailable and the defendant had an opportunity to cross-examine the declarant.  
Crawford
, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374.   Although 
Crawford
 declined to define the term "testimonial," the Court clearly stated that a statement made to a police officer in the course of interrogation is considered "testimonial."  
Crawford
, 541 U.S. at 51-52, 158 L. Ed. 2d at 193, 124 S. Ct. at 1364.  

This case is clearly distinguishable from 
Crawford
.  Unlike 
Crawford
, where the declarant did not testify, in this case, Harris did testify and was "subject to cross-examination."  "[W]hen the declarant appears for cross-examination at trial, the [c]onfrontation [c]lause places no constraints at all on the use of his prior testimonial statements."  
Crawford
, 541 U.S. at 59 n.9, 158 L. Ed. 2d at 197 n.9, 124 S. Ct. at 1369 n.9.  If the declarant is present at trial to defend or explain a statement, the confrontation clause does not bar admission of that statement.  
Crawford
, 
541 U.S. at 59 n.9, 158 L. Ed. 2d at 197 n.9, 124 S. Ct. at 1369 n.9.  A witness is regarded as "subject to cross-examination" when he is placed on the stand, under oath, and willingly responds to questions.  
United States v. Owens
, 484 U.S. 554, 561, 98 L. Ed. 2d 951, 959, 108 S. Ct. 838, 844 (1988).  

Here, Harris willingly testified in court and defendant had the opportunity to cross-examine him.  Thus, defendant's sixth amendment right to confront the witness was not violated.  Moreover, section 611.11 of Cleary & Graham's Handbook of Illinois Evidence indicates that while cross-examination is generally hostile in order to destroy or discredit a witness's testimony on direct examination, cross-examination can also be used to elicit facts from the witness that are favorable to the defendant's case or modify the witness's testimony regarding any unfavorable versions of disputed facts given on direct examination.  M. Graham, Cleary & Graham's Handbook of Illinois Evidence §611.11, at 446 (8th ed. 2004).  When Harris testified on direct examination that defendant was not the shooter and that the shooter was another individual named "Spider," he became a favorable witness to defendant.  Harris, by implicating a third party and denying previously identifying defendant to the police, presented defendant with a defense and set up an impeachment for Detective Golden.  On cross-examination, defense counsel elicited favorable defense facts from Harris by confirming that he never identified defendant to Golden and that "Spider" was the shooter.  

For defendant to argue that he was deprived of the opportunity to cross-examine Harris is truly an illusory proposition.  This is particularly true because the cross-examination questioned the identity of the shooter, which is precisely the purpose of the cross-examination.  Not only was defendant given the opportunity to cross-examine Harris, he had a successful "friendly" cross-examination because the testimony elicited supported and corroborated defendant's theory of the case.  Even if the witness denies making the out-of-court statement of identification, so long as the witness is available at trial, under oath, and willing to testify, the witness is deemed "subject to cross-examination." 

II

Defendant also contends that he was denied a fair trial because the trial court failed to provide a prompt cautionary limiting instruction to the jury at the time Detective Golden impeached Harris's testimony regarding the details of the shooting.  Golden's testimony included details of the shooting, prior identification of defendant as the shooter,
(footnote: 2) and the alleged motive for the shooting.  Defendant argues this allowed the jury to consider his entire testimony substantively.  In addition, defendant argues the trial court compounded the error by giving IPI 3.11 to the jury at the close of the case.  Defendant asserts that the instruction confused the jury and did not provide clear guidance on how to distinguish impeachment evidence from substantive evidence.  Defendant further contends that the State exacerbated the trial court's error by attempting to argue in its closing argument that the jury should consider Golden's testimony substantively.  Defendant argues that he is entitled to a new trial because the improper use of impeachment evidence as substantive evidence results in reversible error.

The State again responds that defendant waived this issue for review. 
 Because this matter bears on defendant's right to a fair trial, this issue will be reviewed as plain error. 

Contrary to defendant's assertion that 
de
 
novo
 review applies, the trial court's refusal to give a cautionary jury instruction is reviewed under the abuse of discretion standard.  
Beiermann v. Edwards
, 193 Ill. App. 3d 968, 981, 550 N.E.2d 587 (1990); 
Tuttle v. Fruehauf Division of Fruehauf Corp.
, 122 Ill. App. 3d 835, 844, 462 N.E.2d 645 (1984).  We find that the trial court did not abuse its discretion in this case. 

In 
People v. Galvan
, 42 Ill. App. 3d 390, 394-95, 356 N.E.2d 139 (1976) (
Galvan
), one of the defendants requested a cautionary instruction that evidence admitted after he rested not be used against him. 
 In denying the defendant's request, this court held that the trial court properly refused to give the instruction because "it might have precluded evidence that the jury should properly have considered."  
Galvan
, 42 Ill. App. 3d at 395.  Ultimately, this court held that prejudicial error did not occur when the trial court refused to give limiting instructions during the trial because the court gave instructions at the close of the trial.  
Galvan
, 42 Ill. App. 3d at 395.

In this case, as in 
Galvan
, defense counsel requested that the trial court instruct the jury prior to Detective Golden's testimony that it could only be considered as impeachment evidence.  After hearing arguments from both parties, the court found that Golden's testimony regarding Harris's prior identification of defendant could be admitted substantively pursuant to section 115-12.  Subsequently, defense counsel again requested the court to instruct the jury that Golden's testimony be admitted for impeachment purposes except for Harris's prior identification of defendant as the shooter.  The trial court decided not to provide the instruction before Golden's testimony because it did not want to anticipate an instruction without first hearing all the evidence. 

At the close of the case, the court instructed the jury pursuant to IPI 3.11:

"The believability of a witness may be challenged by evidence that on some former occasion, he made a statement that was not consistent with his testimony in this case.  Evidence of this kind ordinarily may be considered by you only for the limited purpose of deciding the weight to be given to the testimony you heard from the witness in this courtroom.  However, you may consider a witness'[s] earlier inconsistent statement as evidence without this limitation when the statement narrates, describes, or explains an event or condition that the witness had personal knowledge of [,] and [ ] the statement was written or signed by the witness, or [ ] the witness acknowledged under oath that he made the statement. 

It is for you to determine whether the witness made the earlier statement[,] and[,] if so, what weight should be given to that statement.  In determining the weight to be given to an earlier statement, you should consider all of the circumstances under which it was made." 

Defendant claims that the instruction was confusing because it did not provide clear guidance on how to distinguish between impeachment and substantive evidence.  Defendant also argues that the instruction failed to limit the substantive use of Detective Golden's statement to only the prior identification.  

The test for giving a jury instruction is to determine whether the instruction, taken as a whole, fairly and accurately states the law and whether it is sufficiently clear as not to mislead the jury.  
People v. Wales
, 357 Ill. App. 3d 153, 157-58, 827 N.E.2d 1045 (2005). 

In this case, IPI 3.11 was not confusing.  Here, Harris's statement at trial was inconsistent with his prior statement to Detective Golden.  IPI 3.11 correctly explains the law that a witness's credibility may be challenged by evidence that he made a prior inconsistent statement.  IPI 3.11 further instructs the jury that this inconsistent testimony may be considered "only for the limited purpose of deciding the weight to be given to the testimony."  Thus, the jury was properly instructed to consider Golden's testimony regarding Harris's prior inconsistent statement only for the purpose of determining Harris's credibility.  Additionally, our supreme court has held that IPI 3.11 is "sufficient to guide the jury in its deliberation and provide an adequate safeguard that the jury would not give substantive character to the impeachment testimony."  
People v. Bradford
, 106 Ill. 2d 492, 502, 478 N.E.2d 1341 (1985).  We find that IPI 3.11 clearly instructed the jury as to when and how to evaluate a witness's testimony.

Defendant next contends that the State exacerbated the trial court's error by arguing Detective Golden's testimony as substantive evidence in its closing argument.  "The prosecution generally has wide latitude in fashioning its closing argument, and reversal is unwarranted unless the prosecution's comments substantially prejudice the defendant."  
People v. Herrero
, 324 Ill. App. 3d 876, 887, 756 N.E.2d 234 (2001) (
Herrero
).  The trial court is in a better position than a reviewing court to determine the prejudicial effect of a remark made during a closing argument.  
People v. Peeples
, 155 Ill. 2d 422, 483, 616 N.E.2d 294 (1993) (
Peeples
).  Absent a clear abuse of discretion, a trial court's determination regarding the substance of the closing argument will not be disturbed.  
Peeples
, 155 Ill. 2d at 483.

Defendant points to three portions of the State's closing argument in contending that the State used Detective Golden's testimony substantively.  First, defendant challenges the State's argument to "[p]ay particular attention to what Murray Harris told Detective Golden."  The trial court sustained defendant's objection to this remark.  Generally, a trial judge can cure any prejudicial error made during closing arguments by sustaining an objection.  
People v. Morgan
, 306 Ill. App. 3d 616, 632, 713 N.E.2d 1203 (1999).  Because the trial court sustained the objection, defendant was not prejudiced.

Second, defendant challenges the State's argument that "[w]hen Murray Harris got up on that stand, he was lying to you.  What he told you was a bold face lie.  What he said when this first happened, when his friend [Easley] was lying in the hospital dying, that was the truth." Defendant contends that the State made the same argument as the first remark.  In closing arguments, the prosecution is allowed to comment on the evidence and draw inferences from it. 
People v. Miller
, 302 Ill. App. 3d 487, 495, 706 N.E.2d 947 (1998).  The State's comment, which was made after mentioning Detective Golden's testimony regarding Harris's prior identification, was a reasonable inference drawn from Harris's prior identification of defendant.

Finally, defendant challenges the following argument: 

"When Tony [Garcia] talked to Murray Harris, he acknowledged, yeah, I've already talked to these guys, I told him what I know and I already looked at and identified a photo [of] him.  I want nothing more to do with this. *** But that tells you that everything Detective Golden testified to is exactly how it happened."  

Defendant argues that this comment allowed the jury to consider Detective Golden's testimony in its entirety as the truth, including the statements "you're going to close me down" and the statement concerning "drug relations," which created a possible motive.  

However, the State did not mention a motive in closing.  Rather, the State referred to Harris's prior identification to Detective Golden immediately before making the statement.  These remarks must be considered in the context of the entire argument.  
Herrero
, 324 Ill. App. 3d at 887.  Looking at the comment within the context of the argument, this comment is clearly a reasonable inference from Harris's prior identification.  Moreover, the trial court instructed the jury "to disregard any allegations attributed to [Golden] about something to do with drug relations and this particular defendant.  Disregard it.  Don't consider it in your deliberations at all." 

Additionally, defendant contends that the State's only real purpose in calling Harris as a witness in its case-in-chief was to introduce his prior statements.  Defendant claims that 
People v. Barton
, 286 Ill. App. 3d 954, 677 N.E.2d 476 (1997) (
Barton
) is instructive.  In 
Barton
, the defendant was convicted of first-degree murder.  
Barton
, 286 Ill. App. 3d at 955.  At the defendant's first trial, which resulted in a hung jury, his ex-girlfriend provided an alibi for the defendant.  The witness's testimony was impeached with her prior inconsistent statement where she said that the defendant told her he shot the victim.  
Barton
, 286 Ill. App. 3d at 955-56.  Because the witness was unavailable at the defendant's second trial, the trial court allowed the State to enter her testimony from the first trial.  
Barton
, 286 Ill. App. 3d at 956.  The Fifth District
 found that the evidence was improperly admitted because the only explanation for the State's introduction of the witness's testimony from the first trial was to use the witness's prior inconsistent testimony substantively against the defendant.  
Barton
, 286 Ill. App. 3d at 961-62.

Defendant contends that, as in 
Barton
, the State's only reason to call Harris as a witness was to introduce his prior inconsistent testimony and encourage the jury to consider it as the truth.  This case is distinguishable from 
Barton
. 

As discussed above, Harris's prior identification was properly admitted substantively pursuant to section 115-12.  Although other testimony was elicited from Harris, the trial court properly instructed the jury at the close of the case that inconsistent statements were to be used only for the purpose of deciding the witness's credibility.

III

Finally, defendant contends that the trial court erred by improperly allowing Assistant State's Attorney Garcia to testify because the sole purpose of eliciting his testimony was to bolster the evidence admitted against defendant.  The State contends that Garcia's testimony was properly admitted to perfect Harris's impeachment.  We agree.

Defendant concedes he has failed to properly preserve this issue for appeal, but contends that this court should reach the issue under the plain error doctrine.  Because we find defendant's argument without merit, we need not address the parties' arguments regarding waiver.  See 
People v. Besz
, 345 Ill. App. 3d 50, 58, 802 N.E.2d 841 (2003). 

At trial, the State called Detective Golden to impeach Harris regarding his prior identification of defendant.  To perfect the impeachment, the State called Assistant State's Attorney Garcia to testify that Harris had spoken to Golden about the shooting.  He testified that during the conversation, Harris acknowledged speaking to Golden, seeing the photo arrays, and picking out a photo, but refused to talk to him further.  

The trial court's admission of evidence will not be disturbed unless it amounted to an abuse of discretion.  
People v. Mullen
, 313 Ill. App. 3d 718, 730, 730 N.E.2d 545 (2000).  Defendant argues that Harris's out-of-court statement to Assistant State's Attorney Garcia was inadmissible because the testimony only served to bolster Detective Golden's testimony.  Defendant argues that 
because the State already entered Golden's testimony for the proposition that Harris had spoken to the police and identified defendant as the shooter, taking Garcia's and Golden's testimony together amounted to admitting 
prior consistent statements as the statements were in substantial agreement with one another
.  Defendant, relying on 
People v. Terry
, 312 Ill. App. 3d 984, 995, 728 N.E.2d 669 (2000) (
Terry
), argues that prior consistent statements are inadmissible because they unfairly bolster a witness's credibility as people are more likely to believe something that is repeated.

Generally, a witness's prior statement consistent with his trial testimony is inadmissible to corroborate the trial testimony.  
Terry
, 312 Ill. App. 3d at 995.  In this case, Harris's trial testimony was not consistent with his prior statement to Golden or Garcia.  At trial, Harris denied speaking to the police or identifying defendant in a photo array.  Garcia testified that Harris told him that he had spoken to the police and picked out a photograph.  Because Harris's statement was inconsistent, the trial court properly allowed the State to impeach him.  Supreme Court Rule 238 (a) (188 Ill. 2d R. 238 (a)) provides that the State may attack its own witness's credibility.  
People v. Sims
, 285 Ill. App. 3d 598, 610, 673 N.E.2d 1119 (1996) (
Sims
).  In order to impeach its own witness, the State must show that the witness's trial testimony affirmatively damaged the State's case.  
Sims
, 285 Ill. App. 3d at 610. 
 Here, Harris's trial statement damaged the State's case because he denied identifying defendant as the shooter and implicated a different individual as the shooter.  Because Harris's statement damaged the State's case, the State was properly allowed to impeach his testimony with his prior inconsistent statement to Golden.  The State then perfected this impeachment with Garcia's testimony.  Allowing the State to perfect the impeachment was within the trial court's sound discretion.

Defendant also argues that the mittimus must be amended to reflect the correct credit for time he served in custody prior to sentencing.  Defendant was in custody from the date of his arrest on April 18, 2002, until his sentencing on December 18, 2003.  Therefore, defendant is entitled to 610 days' credit for time served in custody.  Pursuant to Supreme Court Rule 615 (b) (1) (134 Ill. 2d R. 615 (b) (1)), we direct the clerk of the circuit court to amend the mittimus to reflect the correct number of days of credit.  
People v. Butler
, 354 Ill. App. 3d 57, 69, 819 N.E.2d 1133 (2004).  

For the foregoing reasons, we affirm the decision of the circuit court and order the clerk of the circuit court to amend the mittimus to reflect 610 days' credit.

Affirmed; mittimus corrected.

THEIS and KARNEZIS, J.J., concur.

FOOTNOTES
1:
"[T]he declarant's prior statement of identification is admissible as substantive evidence when testified to by a witness to the identification, such as a police officer, even when the declarant at trial denies making or repudiates the identification and denies that the defendant was involved in the crime."  M. Graham, Cleary & Graham's Handbook of Illinois Evidence §611.16, at 467 (8th ed. 2004).

In addressing the Federal Rules of Evidence 801 (d) (1) (c), which Illinois follows in section 115-12, Professor Mauet and Justice Wolfson indicated that "a prior statement is not hearsay if it is 'one of identification of a person made after perceiving the person.'  The rule is self-explanatory.  It is based on the recognition that in-court identification testimony is weak and subject to suggestion.  An out-of-court identification is fresher in time, and the opportunities for exerting influence are less.  When a witness testifies to his out-of-court identification of a person, it is not hearsay."  T. Mauet & W. Wolfson, Trial Evidence, at 145-46 (1997).

2:
We rejected, as discussed above, defendant's contention that allowing Detective Golden to testify regarding Harris's prior identification of defendant after Harris denied making the statement violated defendant's right to confront the witness.