## John Alexander Dowie v. Orpha Black and Margaret C. Stafford.

1. WITNESSES—*Impeachment of.*—In impeaching a witness the proper inquiry is whether the witness knows the general reputation of the person sought to be impeached or sustained. among his neighbors, for truth and veracity, which question the witness must answer in the affirmative before he can be asked what that reputation is.

2. PRACTICE — *Impeachment of Witnesses — Cross-examination.*— When an impeaching witness has testified to general reputation the adverse party may cross-examine him as to his means of knowledge and the grounds of his opinion.

3. TESTIMONY—*By Deposition — What is Necessary to Render it Admissible.*—In order to render testimony taken by deposition admissible, it must appear that the party against whom it is to be used or those in privity had opportunity to examine the person testifying.

4. SAME—*Effect of a Refusal to Testify on Cross-examination.*— Where a witness refuses on cross-examination to answer questions within such time as not unnecessarily to delay the trial after the exercise of the compulsory power of the court, his evidence in chief should be excluded.

5. COURTS—*Exercise of Power to Compel Witnesses to Testify.*— Where a witness refuses to answer proper questions on cross-examination, it is error on the part of the court upon request of counsel, to refuse to use its compulsory power to compel the witness to answer.

Assumpsit, for money loaned. Error to the Superior Court of Cook County; the Hon. JOHN C. GARVER, Judge, presiding. Heard in this court at the October term, 1899. Reversed and remanded. Opinion filed July 5, 1900.

SAMUEL W. PACKARD, attorney for plaintiff in error.

JOHN W. BYAM, attorney for defendants in error.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

Defendants in error recovered judgment against plaintiff in error in an action of assumpsit for the sum of $2,584.33, to reverse which this writ of error was sued out. The judgment is for $2,000, claimed by defendants in error, Orpha Black and Margaret C. Stafford, to have been loaned by them to plaintiff in error, with interest. Defendants in error claim that plaintiff in error borrowed the money of them for the purpose of investing it in corporate stock, on his own account, while plaintiff in error claims that the money was advanced to him by defendants in error for the purpose of buying stock for them, and that, as their agent, he purchased the stock and transferred it to them. Plaintiff in error was the sole witness in support of his claim, who was present when the conversation occurred which culminated in the advance of the money to him by defendants in error. In this state of the case, it was of vital importance to him that his reputation for veracity should not be illegally attacked. The following occurred in the examination of John W. Snowden, a witness called by defendants in error:

"Q. Do you know the defendant, John Alexander Dowie? A. Yes.

Q. How long have you known him? A. The latter part of April, 1895.

Q. Do you know his general reputation in this community for truth and veracity? is it good or bad? A. Extremely bad.

Q. Upon that reputation would you believe him on his oath? A. Well, that depends on circumstances. If he were not specially interested, and there was no money in the question, I might believe him; but if he was interested and there was money in the question, I would not believe him on oath."

Counsel for plaintiff in error moved the court to strike out all the evidence of this witness, which motion the court overruled.

It is apparent from the testimony quoted that the witness did not state that he knew the general reputation of

plaintiff in error for truth. Two questions were asked him at once, namely, first, if he knew Dowie's reputation, and, secondly, whether it was good or bad. He answered only the second question. The witness also, by his answer to the question whether he would believe him on oath, assumes to express his opinion as to the influence self-interest or a pecuniary consideration would have on the mind of plaintiff in error when testifying.

In Gifford v. The People, 148 Ill. 173, the court say:

" The proper inquiry in all such cases is, whether the witness knows the general reputation of the person sought to be impeached or sustained among his or her neighbors, for truth and veracity, which question the witness must answer in the affirmative before he or she can be asked what that reputation is," citing seven prior Illinois cases.

In Massey v. Farmers' Nat. Bank of Virginia, 104 Ill. 327, a witness having testified that Massey's general reputation for truth and veracity was not very good, was asked this question: "From that reputation would you, or not, in a case where he was personally interested, believe him under oath?" The witness answered: "If Mr. Massey was interested I would hesitate to believe him." The same question was put to other witnesses and answered in substantially the same way. The court held the permitting the question to be put was error, saying:

" Mr. Greenleaf, after stating the English rule, remarks that in the American courts perhaps the weight of authority is now against permitting the witness to testify as to his own opinions. This is a consideration against extending such rule of inquiry as to the witness' own belief beyond the limit for which it has the sanction of authority. This mode of impeachment is confined to general reputation. Evidence is not admitted of particular facts, and the opinion allowed to be expressed is to be based solely on general reputation, and not on particular facts. The opinions which were permitted to be given in the present case were not founded upon general reputation alone, but upon general reputation and interest in the case. Now, the effect of interest upon the credibility of testimony is solely for the consideration and judgment of the jury, and no witness should be allowed to pronounce upon it. The naked question, whether, from

defendant's interest in the case, the witness would believe him on oath, no one would pretend to justify. There would be the same objection, though less in degree, to such an inquiry, based upon general reputation for truth, and interest in the case. Both questions would be improper as calling for an expression of opinion as to the effect of personal interest upon the credibility of testimony—in the one case, as to the effect of interest alone, in the other, as to its effect in conjunction with another discrediting circumstance. There should not be given the opinions of witnesses upon the discrediting effect of interest, in whole or in part, upon testimony."

We are of opinion that the testimony of the witness Snowden should have been stricken out, and that the court erred in overruling the motion of plaintiff in error to that effect.

Joel Stevens, a witness for defendants in error, testified on his direct examination, that he knew the general reputation of plaintiff in error for truth and veracity, and that it was bad. On cross-examination he testified that he heard " any amount of people " talk about Dowie's reputation for truth and veracity, but on being asked to give their names he refused to do so. He said his memory for names was bad; that he remembered a few of the names, but would not state them. The following question was asked him and he answered as follows :

" Q.  Then you can not remember the name of any person who said they wouldn't believe him on oath ?
A.  I can, just a few of them; I won't give the name up."

Another answer of the witness is as follows :

" I won't tell their names.  I wouldn't care for Mr. Stubblefield or anybody else.  I have got in this Zion Tabernacle up here, friends.  I have got cases that will be developed in a little while, and am not going to give them away."

Mr. Stubblefield was the attorney of plaintiff in error. He further testified :

" I want to tell you something right now, that I can tell you of a hundred different people, but I dare not for this reason: they told me not to, because Dowie, they said, would curse them and bring down the wrath of God, and for me not to mention their names."

Counsel for plaintiff in error moved to strike out the testi-

mony of the witness, because of his refusal to give the names of the persons referred to by him, and the court overruled the motion. The witness testified that he was an attorney, and said something about clients, namely, "my clients have called my attention to this," and claimed the names were a privileged communication, but we find nothing in the record to support this view.

It is well settled that when an impeaching witness has testified to general reputation, the adverse party may cross-examine him as to his means of knowledge and the grounds of his opinion. Annis v. People, 13 Mich. 511, 515, and authorities there cited.

In the same case, the court, Cooley, J., delivering the opinion, say:

"Nothing short of a cross-examination, which compels the impeaching witness to state both the source of the reports and their nature, will enable the party either to test the correctness of the impeaching evidence, or to protect the witness who is assailed unjustly." See also, 2 Shinn's Pl. & Prac., Sec. 887.

The testimony of the witness in question was very rambling and incoherent, but, on the hypothesis that the court considered him mentally sane, it was the duty of the court to fine and imprison him until such time as he would yield obedience to the law. Sprague v. Craig, 51 Ill. 292-3.

Whether the court should have excluded his testimony altogether because of his refusal to answer, is a question not free from difficulty.

"The doctrine as laid down is, that in order to render the testimony taken admissible, it must appear that the party against whom it is to be used, or those in privity, had opportunity to examine." Sperry v. Moore's Estate, 42 Mich. 353, 361, and authorities cited.

In the last case the deposition of a witness was excluded because the party against whom it was taken was deprived, without his fault, of opportunity to complete the cross-examination of the witness, the party taking the deposition having agreed to produce the witness for continuance of cross-examination, but having failed so to do. Our attention has not been called to any case in which, opportunity

having been afforded for cross-examination, the testimony of a witness was excluded because of his refusal to answer questions on cross-examination. We are inclined to the opinion that if a witness should refuse on cross-examination to answer any questions, within such time as not unnecessarily to delay the trial after the exercise of the compulsory power of the court, his evidence in chief should be excluded; and we perceive no good reason, why, if a witness refuses to answer, on cross-examination, competent questions relating to important or vital matters, in respect to which he testified in chief, his direct testimony should not be excluded. Such exclusion may be a hardship to the party producing the witness, but it seems just and equitable that the party producing such a witness should suffer, rather than that the opposite party should be deprived of his legal right. In the present case the court was urged by counsel for plaintiff in error to compel the witness to give the names which he persisted in withholding, but the court refused to exercise its compulsory power in the premises. This was error.

In view of certain objections and rulings on the trial, and because the cause must be remanded for retrial, we think it expedient to call attention to the following language of the court in Gifford v. The People, *supra :*

" It is not necessary, as seems to have been supposed by counsel on both sides in this case, that witness should have heard any considerable number of the neighbors of the witness sought to be impeached or sustained, speak of his reputation for truth and veracity. It may very well be that the reputation for truth and veracity, or chastity, or common honesty of a person may be known among his neighbors and acquaintances without its having been generally discussed. Indeed, one whose word passes current among his associates and neighbors, or who is received and accepted by society as a virtuous man or woman, or whose honesty is not questioned in the community in which he lives, will ordinarily excite no discussion or comment, and yet every person in the community knows that he or she is accepted, recognized and reputed to be a truthful, virtuous or honest person."

The judgment will be reversed and the cause remanded.