THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. A.J. STACKHOUSE, Defendant-Appellant.

First District (2nd Division)   No. 1—02—0281

Opinion filed November 30, 2004.

Michael J. Pelletier and Sarah Curry, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Veronica Calderon Malavia, and Dawn Kibbon, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GARCIA delivered the opinion of the court.

In May 2001, the defendant, A.J. Stackhouse, was charged with robbery (720 ILCS 5/18—1 (West 2000)) and aggravated battery (720 ILCS 5/12—4(b)(8) (West 2000)). Following a bench trial in November 2001, the trial court found the defendant guilty of robbery (720 ILCS 5/18—1 (West 2000)). The trial court sentenced the defendant to an extended 10-year term in the Illinois Department of Corrections (DOC).

The defendant appeals, arguing that the trial court erred in (1) permitting the State to augment the defense's offered stipulation, (2) allowing a police officer to testify that the victim identified the defendant at the scene, and (3) sentencing him to an extended-term sentence. Although we agree with the defendant on the first two issues raised on appeal, we nonetheless affirm.

## BACKGROUND

The victim, David Vasquez Ortiz, testified that on April 15, 2001, shortly before 8 p.m., he was walking toward the bus stop at 3158 West 63rd Street. Ortiz testified that he had consumed several beers earlier in the evening. While Ortiz was waiting for the bus, a woman, later identified as Jennifer Geraci,[1] approached him for a date. Ortiz turned her down. Once a bus arrived at the bus stop, Ortiz attempted

---

[1]Jennifer Geraci was also charged for her part in this crime. However, Geraci is not involved in the instant appeal.

to get on the bus's first step, but he was hit on the head from behind. Ortiz testified that he did not see who hit him. Ortiz testified that $20 and his watch were taken. Ortiz specifically testified that his watch, which had a picture of Jesus Christ on it, was removed from his left wrist. Ortiz testified that after he was struck on the back of his head, a Chicago Transportation Authority (CTA) bus driver came to his aid. Shortly thereafter, a police officer arrived and took him across the street to the parking lot of a Walgreen's drugstore. Ortiz testified he recognized Geraci as the woman who robbed him; however, he could not identify the man. While in the parking lot, the police officer returned Ortiz's watch to him.

Sharon Davis, a CTA bus driver upon whose bus Ortiz sought to board, testified that she saw Ortiz flagging her down, but a white woman standing next to Ortiz, later identified as Geraci, was telling her to go on. Davis stopped the bus and Ortiz attempted to get on; however, Geraci pulled Ortiz off the step and a black man, later identified as the defendant, hit Ortiz from behind. Davis testified that after the defendant hit Ortiz, both he and Geraci dragged Ortiz to the side of the bus. Davis testified that, using the mirror on the side of her bus, she was able to see the defendant and Geraci going through Ortiz's pockets. Davis testified that before the date in question, she did not know Ortiz, Geraci, or the defendant. Davis then made an in-court identification of the defendant.

Davis testified that she put her bus in neutral until the defendant and Geraci were finished going through Ortiz's pockets, then she got off the bus, flagged down a police officer, and assisted Ortiz. When Davis got off of the bus, Ortiz was lying on the side of the bus by the front wheel. The defendant and Geraci had walked south toward Walgreen's. Davis testified that she gave a police officer a description of the two individuals and pointed him in their direction of travel. Davis testified that police officers immediately ran after the offenders.

Chicago police officer Michael Ferguson testified that he was on duty around 8 p.m. on April 15, 2001. Officer Ferguson testified he was waved down by a CTA bus driver who told him that a man had just been robbed and the bus driver pointed to the victim lying on the ground. The bus driver gave Officer Ferguson a description of the offenders and pointed him in their direction of travel. Officer Ferguson testified that when he looked in the direction indicated by Davis, he saw the two subjects walking through Walgreen's parking lot. Officer Ferguson identified the defendant as one of the individuals he detained in the parking lot. Officer Ferguson testified that the other individual was a white woman wearing a blue coat and blue jeans.

Officer Ferguson testified that he stopped the two individuals and

placed them in custody. Officer Ferguson testified that a silver watch with a picture of Jesus Christ on it was recovered from the defendant's pocket. Officer Ferguson testified that he showed the watch to Ortiz. Officer Ferguson also testified that Ortiz acknowledged the watch was his and said that it had been taken from him. Officer Ferguson testified that Ortiz identified both the defendant and Geraci.

At this point, the State rested and the defendant testified on his own behalf.

The defendant testified that he had been convicted of delivery of a controlled substance in 1998 and unlawful use of a weapon by a felon in 2000. The defendant testified that prior to his arrest on April 15, 2001, he was sitting in his dining room. The defendant testified that the back of his home abuts an alley and a Walgreen's parking lot. The defendant testified that he left his home because he heard Geraci yelling, "A.J. A.J. help me. They took my money, took my money." The defendant testified that he thought Geraci was being robbed so he went out on his back porch and saw Geraci as well as a man everybody calls "Armando," identified as the victim Ortiz. The defendant testified that he also saw "about six young black brothers ready to beat him [Ortiz] down."

The defendant testified that he eventually left his porch, walked down to the alley, and asked Ortiz what was wrong. The defendant testified that Ortiz told him that Geraci was bothering him and that she claimed he owed her money. The defendant also testified that Ortiz told him that he did not have any money and did not owe Geraci anything. The defendant testified that he told Ortiz, "I say man, you out of it. You scummy." The defendant testified that by "scummy" he meant that Ortiz "was drunk. He didn't know nothing." The defendant testified that he sent Ortiz on his way, walking him to the bus stop for his safety. The defendant testified that he thought Ortiz was in danger because Geraci was popular with the boys and they were with her, ready to beat Ortiz.

The defendant testified that Ortiz got on the bus, but then Geraci pulled him off. The defendant testified that he did not hit Ortiz on the back of the head, "I did not touch that man. I got the hell away from there." The defendant testified that the police did not recover Ortiz's watch from him; however, the defendant testified that he was present when the watch was recovered. The defendant testified that he was handcuffed to a bar inside the police station at 63rd and St. Louis Streets when Officer Ferguson reached over to Ortiz's wrist, told Ortiz he had a nice watch, and said, "I want you to say Stackhouse has your watch." The defendant testified that he had dealt with Officer Ferguson in the past. When asked why Officer Ferguson would want to set

him up, the defendant replied it was because "I was selling narcotics in the neighborhood and I stopped and they never could catch me, right, so they been warning me and warning me and this is why. And plus they thought [Geraci] and I were man and woman and they was against that."

On cross-examination, the defendant testified that he helped Ortiz to the bus stop because Ortiz was drunk, they were friends, and they had hung out many times. By "help" the defendant clarified that they were walking and talking on the way to the bus stop. The defendant testified that he did not touch Ortiz during their walk to the bus stop or actually assist him in getting on the bus. The defendant also testified that when Geraci grabbed Ortiz, he got out of the way because he did not want to be involved. The defendant testified that he left the bus stop and headed home. The defendant testified that Geraci was "a friend of the family," and she caught up with him in the parking lot of Walgreen's.

A sidebar was then called. The State told the trial court that it had been asked to stipulate to something that was allegedly said to police detectives and included in their police report. The trial court asked the defense attorney for the proposed stipulation. Following the defense attorney's reading of the proposed stipulation, the State requested the remainder of the pertinent portion of the police report be entered into evidence. The trial court heard the remainder and allowed into evidence a more limited portion of the remainder of the statement.

Closing arguments were then made. In reaching its verdict, the trial court recounted the facts it found most persuasive. Based on its recounting of the evidence, the trial court found that the charge of aggravated battery on a public way merged into the robbery charge because the same force was used to accomplish each offense. Accordingly, the trial court found the defendant guilty of robbery (720 ILCS 5/18—1 (West 2000)) only.

The defendant was sentenced on December 28, 2001. The trial court found that the defendant was previously convicted of a Class 2 felony making the defendant eligible for an extended-term sentence of 7 to 14 years. 720 ILCS 570/401 (West 2000). The trial court sentenced the defendant to an extended-term sentence of 10 years in the DOC.

## ANALYSIS

The defendant presents three arguments on appeal. The defendant first contends that the trial court erred in allowing the State to "augment" the defense stipulation accepted by the trial court. The defendant also argues the trial court erred in permitting Officer Fer-

guson to testify that Ortiz identified the defendant at the scene. Finally, the defendant argues that the trial court erred in imposing an extended-term sentence.

## I. Stipulation

The defendant contends that the trial "court erred in permitting the State to augment the stipulation entered by the defense as to a prior inconsistent statement, with inadmissible hearsay and double hearsay of additional statements made by Davis to police detectives." The defendant contends that the augmented material was not only inadmissible hearsay but greatly prejudicial. The defendant concedes this issue has been forfeited, as no objection was made at trial and this issue was not raised in a posttrial motion. However, the defendant attributes the omissions to ineffective counsel and urges us to review the matter under the plain error rule on the ground that the erroneous admission of the hearsay evidence denied the defendant a fair trial.

The State contends that the addition to the defense stipulation was properly allowed by the trial court under the completeness doctrine. The State also argues that even if the addition to the stipulation was not admissible under the completeness doctrine, the defendant has forfeited review of this issue and has failed to demonstrate that this claimed error rises to the level of plain error. Accordingly, so the State contends, the defendant did not receive ineffective assistance from his trial counsel.

We first note that the trial court clearly considered the defense stipulation regarding the prior inconsistent statement by Davis to the investigating police detectives and the State's request to admit the balance of Davis's statement as separate evidentiary issues. The trial court accepted the defense stipulation regarding the prior inconsistent statement by Davis to the investigating police detectives once the State indicated it would stipulate to it. The State then sought to introduce the balance of Davis's statement to the investigating detectives under the completeness doctrine. The trial court stated that once it hears the balance of Davis's statement, if the balance is "relevant and should be admitted as far as the other [statement], I'll consider it." Defense counsel then read the balance of Davis's statement, and the trial court stated it would consider portions of the statement. Although the trial court did not state the basis for its ruling, it appears clear that the trial court found the balance of the statement admissible under the completeness doctrine. We do not believe, however, that the trial court's ruling was the equivalent of "permitting the State to augment the stipulation entered by the defense as to

a prior inconsistent statement." We consider the issue before us to be whether the balance of Davis's statement was admissible under the completeness doctrine.

## A. Forfeiture

■ As stated above, the defendant did not object to either (1) the State's request, or (2) the trial court's ruling regarding the information contained in the balance of Davis's statement that it found relevant and pertinent to the proceedings. Moreover, the defendant did not raise as error the trial court's consideration of the balance of Davis's statement in his posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988). By not objecting at trial or raising this issue in a posttrial motion, the defendant has forfeited this issue for purposes of our review. *Enoch*, 122 Ill. 2d at 186. However, because the defendant asserts this claim in the context of a challenge to the effectiveness of his trial counsel, we will examine the record to determine whether there was error; if so, whether the error was plain; and, if so, whether the plain error was "of such a magnitude that the accused was denied a fair trial and remedying the error is necessary to preserve the integrity of the judicial process." *People v. Bradley*, 336 Ill. App. 3d 62, 66, 782 N.E.2d 825 (2002).

## B. Completeness Doctrine

The State contends the balance of Davis's statement was admissible under the completeness doctrine and, therefore, the trial court did not err in its ruling admitting the balance of Davis's statement. The defendant contends that the balance of Davis's statement was inadmissible hearsay and double hearsay, the admission of which "resulted in great prejudice [to the defendant]."

■ The completeness doctrine is an exception to the hearsay rule that provides " ' "if one party introduces part of an utterance or writing the opposing party may introduce the remainder or so much thereof as is required to place that part originally offered in proper context so that a correct and true meaning is conveyed to the jury." ' " *People v. Nunn*, 301 Ill. App. 3d 816, 821, 704 N.E.2d 683 (1998), quoting *People v. Williams*, 109 Ill. 2d 327, 334, 487 N.E.2d 613 (1985), quoting *Lawson v. G.D. Searle & Co.*, 64 Ill. 2d 543, 556, 356 N.E.2d 779 (1976). The right to bring out all of a writing or conversation is not absolute and depends on the relevancy of the additional parts that a party seeks to add. *Nunn*, 301 Ill. App. 3d at 821.

In this case, the trial court allowed the defendant's stipulation regarding Davis's statement to the investigating police detectives that at the time the victim was pulled off the bus and thrown to the ground by the defendant and Geraci, "[Davis] was unable to see the [victim]

and offenders at this point because they were on the ground between the curb and her bus." This portion of Davis's statement was admitted to impeach her trial testimony. Thus, it was admitted for the limited purpose of challenging her trial testimony that she was able to observe what transpired after the victim was pulled off the bus; clearly, the statement was not admitted as substantive evidence.

In response, the State sought to introduce the balance of Davis's statement to the investigating police detectives: "Davis stated that she heard yelling and the victim demanding offenders to stop. Davis stated that the offenders fled behind a bus, crossed the street and entered the Walgreen's parking lot across the street. At this time, the victim informed Miss Davis that he had been robbed and Davis flagged down Officers Ferguson and Gill and pointed *** to the offenders." The trial court ruled it would consider "the part about she heard yelling behind the bus, that will be allowed in. The part the victim said he was robbed I will consider that. *** The balance I won't."

The defendant properly challenges the application of the completeness doctrine to support the admission of the balance of Davis's statement because "the additional portions of Davis's statement to police did not explain, qualify, or otherwise shed light on the meaning of the prior inconsistent statement that was introduced." The State is unable to marshal a persuasive response to this argument. We find none either. That Davis heard "yelling behind the bus" and that the victim said "he was robbed" cannot reasonably be understood to "shed light" on the impeaching statement of Davis that she "was unable to see the [victim] and offenders" after they pulled the victim from the bus. The defense stipulation concerning Davis's statement, which was at odds with her trial testimony, was in no way connected to the balance of Davis's statement that the State sought to introduce. See *People v. Pietryzk*, 153 Ill. App. 3d 428, 438-39, 505 N.E.2d 1228 (1987) (completeness doctrine inapplicable to statement that did not "shed light" on the meaning of oral statements but, rather, contradicted them); *People v. Russell*, 177 Ill. App. 3d 40, 48, 531 N.E.2d 1099 (1988) ("if the related conversation is otherwise inadmissible, the principle of completeness does not give a party an automatic right to introduce it merely on the ground that the opponent has opened the door").

Moreover, the application of the completeness doctrine to the evidence sought to be admitted by the State is highly questionable for a separate and distinct reason. The completeness doctrine is recognized as an exception to the hearsay rule. That is, the completeness doctrine is relied on to introduce the balance of an out-of-court statement for the truth of the matter asserted, the classic definition of hearsay. Yet, the application of the strict definition of the completeness doctrine in

this case would lead to the illogical conclusion that admission of impeachment evidence (the defense stipulation) would lead to the admission of substantive evidence (the balance of Davis's statement under the completeness doctrine) to "explain, qualify, or shed light" on nonsubstantive evidence! This cannot be nor has the State presented any authority for this apparently novel legal theory.

Clearly, the balance of Davis's statement was hearsay, and in light of the limited purpose for which the defense stipulation was admitted, the completeness doctrine is unavailable to the State to justify the admission of the balance of Davis's statement. The State's contention that the balance of Davis's statement also qualified under the "state of mind" exception to the hearsay rule is rejected on the same basis.[2]

Although the trial court appeared to have admitted the balance of Davis's statement pursuant to the completeness doctrine, we are not so sure it intended to admit the balance of Davis's statement as substantive evidence, as one would ordinarily have to conclude based on the strict definition of the completeness doctrine as an exception to the hearsay rule. Rather, based on our reading of the trial transcript, we believe the trial court considered the balance of Davis's statement only as it impacted the defense stipulation: "Let me hear what the paragraph is. [If] I think it's relevant and should be submitted as far as the [defense stipulation,] I'll consider it." In other words, the balance of Davis's statement was admitted to mitigate the impeachment value of the defense stipulation or, in effect, to "rehabilitate" Davis. See *People v. Hicks*, 28 Ill. 2d 457, 463, 192 N.E.2d 891 (1963) ("where a witness has been impeached by proof that he has made prior inconsistent statements, he may bring out all of the prior statements to qualify or explain the inconsistency and rehabilitate the witness"). Such rehabilitative evidence, of course, would have to be admitted through Davis herself, and not by way of her statements to the investigating police detectives. And, perhaps, the State's proffer of evidence was meant to do just that. Ultimately, however, the balance

---

[2]It is doubtful that the "state of mind" exception even applies here where the declarant testified. See *People v. Pineda*, 349 Ill. App. 3d 815, 821, 812 N.E.2d 627 (2004) (holding that declarant must be unavailable for the state of mind exception to apply). However, we note that under the Federal Rules of Evidence, statements are admissible under the state of mind exception even if the declarant is available (Fed. R. Evid. 803(3)), and it has been suggested that this should be the rule in Illinois. See *People v. Hansen*, 327 Ill. App. 3d 1012, 1023 n.2, 765 N.E.2d 1033 (2002), citing M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 803.4, at 802 (7th ed. 1999); *People v. Nyberg*, 275 Ill. App. 3d 570, 586, 656 N.E.2d 65 (1995) (Wolfson, J., specially concurring).

of Davis's statement would be inadmissible under this theory as well, as it fails to "qualify or explain the inconsistency" set forth in the defense stipulation. *Hicks*, 28 Ill. 2d at 463.

Consequently, the admission of the balance of Davis's statement given to the investigating police detectives was error, although not of the magnitude the defendant asserts based on our review of the evidence. We are not persuaded that the balance of Davis's statement, as substantive evidence or not, in any real way "greatly prejudiced" the defendant. We base this conclusion on the overwhelming, nonhearsay evidence introduced against the defendant.

Davis testified that as Ortiz attempted to get on the bus, she saw the defendant hit Ortiz on the back of the head. Davis also testified that she saw the defendant and Geraci pull Ortiz off the bus and drag him to its side. The trial court found Davis's testimony credible as she had no association with either the defendant, Geraci, or Ortiz. Davis also testified that, using her bus's side mirror, she was able to see the defendant and Geraci going through Ortiz's pockets. This statement was impeached, however, by Davis's statement to police detectives, introduced into evidence by the defense stipulation, that she was unable to see the victim and offenders when they were at the side of the bus because they were on the ground between the curb and the bus. The trial court stated that regardless of whether Davis was able to see what occurred at the side of the bus, Davis was able to place the defendant as an active participant in the assault and robbery of Ortiz. The trial court emphasized that Davis testified she saw the defendant hit Ortiz on the back of the head, pull Ortiz off the bus, and drag him to its side.

Moreover, the defendant was found shortly after the robbery in a Walgreen's parking lot across the street from where the robbery occurred with Ortiz's watch, one of the items taken during the robbery. Officer Ferguson found the watch in the defendant's pocket. Officer Ferguson testified that he showed the watch to Ortiz, and Ortiz acknowledged that it was his and that it had been taken from him during the robbery.

The trial court specifically found the defendant's testimony to be unbelievable. The trial court found that the defendant's testimony that he walked Ortiz to the bus stop in order to protect him made no sense when the defendant also claimed (1) Ortiz did not require any physical help on the walk to the bus stop, and (2) he left the scene after Geraci pulled Ortiz off the bus.

■ Therefore, the trial court error in admitting the balance of Davis's statement does not rise to the level of plain error because of the limited purpose for which the disputed evidence was used and in

view of the overwhelming, nonhearsay evidence against the defendant. See *People v. Crespo*, 203 Ill. 2d 335, 349, 788 N.E.2d 1117 (2001) (no plain error where "[the] defendant has failed to show the error was prejudicial"). Consequently, the defendant suffered no prejudice, great or otherwise, by the trial error. See *People v. Cowper*, 145 Ill. App. 3d 1074, 1083, 496 N.E.2d 729 (1986) ("A judgment of conviction will not be reversed merely because error was committed at trial unless it appears that the finding of guilt may have resulted from such error"). Consequently, the defendant was not denied effective assistance of counsel. See *People v. Evans*, 209 Ill. 2d 194, 808 N.E.2d 939 (2004) (no viable ineffective assistance of counsel claim where there is no reasonable probability that the result of this case would have been different absent the trial error).

Absent a showing of prejudice to the defendant based on the established trial error, there is no plain error and the procedural default will be honored. *People v. Keene*, 169 Ill. 2d 1, 17, 660 N.E.2d 901 (1995). We therefore find the issue forfeited.

## II. Officer Ferguson's Testimony

Next, the defendant argues it was error for the trial court to allow Officer Ferguson to testify regarding a claimed prior identification of the defendant by Ortiz shortly after the robbery occurred. The defendant argues that Officer Ferguson's testimony regarding Ortiz's alleged identification of the defendant was hearsay and improperly admitted under section 115—12 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115—12 (West 2000)). According to the defendant, "[Officer] Ferguson's testimony that Ortiz did identify [the defendant] in the Walgreen's parking lot does not conform to the rationale behind section 115—12" because, "in this case, Ortiz testified that he did not make an identification of [the defendant] at the scene and Ortiz did not identify [the defendant] at trial."

### A. Prior Identification

At the time of Officer Ferguson's testimony, the defendant's attorney objected to statements regarding Ortiz's alleged identification of the defendant on the evening of the robbery, arguing that it was hearsay. The trial court overruled the objection based on section 115—10.1 (725 ILCS 5/115—10.1 (West 2000)). However, in explaining its verdict, the trial court recounted the evidence it found persuasive and noted that it had erred in relying on section 115—10.1 (725 ILCS 5/115—10.1 (West 2000)) when allowing Officer Ferguson's testimony; instead, it based its ruling on section 115—12 (725 ILCS 5/115—12 (West 2000)). The trial court also stated that the out-of-court identification "doesn't matter at all [because] there is more than enough without this."

Ortiz was examined concerning his ability to identify the male offender at the time of the robbery by both the prosecution and defense.

"Q. [The State]: When the man hit you from behind what happened to you?

A. [Ortiz]: I went on the ground.

Q. [The State]: Did you look at the man's face?

A. [Ortiz]: No.

* * *

Q. [The State]: Where did [the police] take you?

A. [Ortiz]: They took me across the street to a store, Walgreen's.

* * *

Q. [The State]: Who did you see [there]?

A. [Ortiz]: I seen the two guys that robbed me?

Q. [The State]: When you say two guys, was it two guys?

A. [Ortiz]: No, it was a lady and a man.

Q. [The State]: Were you able to recognize either of them?

A. [Ortiz]: Yes, the lady.

Q. [The State]: And the lady you recognized because that's the one you had been having a conversation with?

A. [Ortiz]: Yes

Q. [The State]: The man you never saw?

A. [Ortiz]: No, I did not see him.

* * *

Q. [Defendant's Attorney]: So you don't know who hit you, do you?

A. [Ortiz]: No, I didn't. That's what I said.

THE COURT: You said before a man hit you from behind. Were you able to see if it was a man or a woman?

A. [Ortiz]: I just know that somebody hit me from behind. I don't know which one hit me.

* * *

Q. [Defendant's Attorney]: And you couldn't see who took your wallet?

A. [Ortiz]: No, I didn't see.

* * *

Q. [Defendant's Attorney]: And you didn't see them as they were running away, did you?

A. [Ortiz]: No, I didn't.

THE COURT: Did you see who took your watch?

A. [Ortiz]: No. They were just pulling on it. I got dizzy with the hit on the head."

Regarding the alleged out-of-court identification of the defendant by Ortiz, the following testimony was elicited from Officer Ferguson by the prosecution.

"Q. [The State]: Did Mr. [Ortiz] come and look at the two individuals that you had stopped?

A. [Officer Ferguson]: Yes he did.
Q. [The State]: Was he able to identify either of them?
A. [Officer Ferguson]: Yes, he was.
\* \* \*
Q. [The State]: Which one was he able to identify, if any?
A. [Officer Ferguson]: Both.

■ Section 115—12 of the Code of Criminal Procedure (725 ILCS 5/115—12 (West 2000)) provides: "A statement is not rendered inadmissible by the hearsay rule if (a) the declarant testifies at the trial or hearing, and (b) the declarant is subject to cross-examination concerning the statement, and (c) the statement is one of identification of a person made after perceiving him." 725 ILCS 5/115—12 (West 2000). Under the plain language of section 115—12, the evidentiary foundation for admission of a statement of prior identification must satisfy all three elements. See *People v. Holveck*, 141 Ill. 2d 84, 104-05, 565 N.E.2d 919 (1990) (the three elements of section 115—12 were satisfied where the identification witness testified about her out-of-court identification of the defendant and she was cross-examined about identifying a man in a newspaper photograph as "stranger danger"). "The language of this section does not require an in-court identification, nor does it prohibit the introduction of a prior identification statement where the witness fails to identify the defendant in open court." *People v. Bowen*, 298 Ill. App. 3d 829, 834, 699 N.E.2d 1117 (1998).

The section does, however, require the declarant to testify and be subject to cross-examination regarding the out-of-court identification statement *before* a third party may testify to the making of such a prior statement of identification by the declarant. "When a declarant \*\*\* testifies but fails to give testimony concerning his out-of-court statement of identification, it is inadmissible hearsay for a third party \*\*\* to testify that the declarant made the out-of-court statement of identification." *People v. Bradley*, 336 Ill. App. 3d 62, 70, 782 N.E.2d 825 (2002). In *Bradley*, the victim testified during the first day of a bench trial but was not examined regarding his identification of the defendant in a photo array made while the victim was in the hospital because the array was not available on the first day of trial. *Bradley*, 336 Ill. App. 3d at 70. Apparently, the photo array and the victim were both available on the second day of trial, but the out-of-court identification of the defendant by the victim was not brought out. Nonetheless, the State elicited from the police detective that conducted the photo lineup that the victim identified the defendant's photo from the array. We held that the police detective's testimony was hearsay and not admissible under section 115—12 because the declarant never

testified regarding the out-of-court identification and, thus, was not subject to cross-examination concerning the prior statement of identification. *Bradley*, 336 Ill. App. 3d at 70.

■ Here, we have direct testimony from the victim, under both direct and cross-examination, that he did not see the male offender during the course of the robbery and did not identify the male offender shortly after the robbery during the confrontation in the Walgreen's parking lot. Based on this testimony and our decision in *Bradley*, we hold that Officer Ferguson's testimony that Ortiz identified "both" offenders in the Walgreen's parking lot was inadmissible hearsay. Clear and unequivocal testimony that no identification was ever made of the defendant by the victim of the crime precludes the admissibility of an out-of-court identification statement by a third party no less so than when no testimony is elicited from the victim regarding "his out-of-court statement of identification." *Bradley*, 336 Ill. App. 3d at 70. Stated differently, if the absence of testimony by the identification witness concerning "his out-of-court statement of identification" precludes the admissibility of testimony by the third party regarding the declarant's prior identification statement, an unequivocal denial by the identification witness that he ever made an "out-of-court statement of identification" likewise precludes the admissibility of any testimony by the third party of the alleged prior identification statement under section 115—12. It is a logical and compelling extension of our holding in *Bradley* that in the face of clear and unequivocal testimony by Ortiz that he never identified the defendant at the parking lot shortly after the robbery, Officer Ferguson's testimony that Ortiz identified "both" offenders shortly after the robbery was not admissible as substantive evidence under section 115—12. *Bradley*, 336 Ill. App. 3d at 70.

Our holding is further supported by the plain language of the third element of section 115—12 that requires the witness's identification statement at issue be "made after *perceiving* him" in order to avoid the inadmissibility of such a statement by the hearsay rule. (Emphasis added.) 725 ILCS 5/115—12 (West 2000). "Perceive" is defined as "to recognize or identify." Webster's Third New International Dictionary 1675 (1986). Based on this definition, it seems clear that the third element requires some evidence that Ortiz either "recognize[d] or identif[ied]" the defendant at the time the statement of identification was allegedly made. 725 ILCS 5/115—12 (West 2000). See, *e.g.*, *Bowen*, 298 Ill. App. 3d at 832 (eyewitness, out of court, identified a photograph of the defendant and identified the defendant in a lineup but in court testified he identified defendant as a member of a rival street gang but not the shooter). In this case, Ortiz denied

ever identifying the defendant as one of the assailants.[3] Thus, there is no evidence from Ortiz that he ever "perceived" the defendant at the confrontation in the parking lot.

Nor do we believe that Officer Ferguson's testimony qualifies as "some evidence" that Ortiz "perceived" the defendant. To so hold would in effect transform this exception to the hearsay rule into a credibility contest between the declarant and the third party present for the alleged prior identification statement. We have been presented with no authority for such a broad reading of the section, nor does the plain language of section 115—12 support such an interpretation. If the identification statement attributed to Ortiz by Officer Ferguson were admissible as substantive evidence in the face of such unequivocal and contrary evidence from Ortiz, it would make illusory the section's safeguard of Ortiz being "subject to cross-examination concerning the statement." 725 ILCS 5/115—12(b) (West 2000). The search for truth through cross-examination concerning a prior statement of identification is rendered almost pointless where testimony is elicited from the purported "declarant" that no out-of-court identification statement was ever made because the witness never had the opportunity to observe the defendant during the course of the robbery and, yet, a prior identification statement, without any evidentiary support independent of the third-party witness's testimony that the prior identification statement was made, is nevertheless admissible as substantive evidence through the testimony of that third party. See generally *People v. Johnson*, 255 Ill. App. 3d 547, 558, 625 N.E.2d 1073 (1993) (a sufficiently reliable basis for admitting prior inconsistent statements as substantive evidence must be shown to satisfy constitutional due process requirements). In our judgment, the reliability of the prior identification statement attributed to Ortiz by Officer Ferguson is sufficiently undermined to preclude its admissibility

---

[3]We also note there is nothing in the record to suggest that Ortiz's testimony that he did not see the male offender during the course of the robbery was an attempt to back away from his alleged identification at the scene. *Cf. Bowen*, 298 Ill. App. 3d 829, 699 N.E.2d 1117; *Gonzalez*, 292 Ill. App. 3d 280, 685 N.E.2d 661. Ortiz testified very clearly that he recognized the woman because she approached him and they had a conversation. Ortiz related that he was unable to see the other offender because he was struck on the head from behind, making him "dizzy," and thus preventing him from seeing the other offender. Officer Ferguson may simply have been wrong that Ortiz identified "both" offenders in the parking lot, as opposed to only the female, or Ortiz may have misspoken when he said "both," as when he misspoke when he testified both assailants were "guys." What is clear, however, is that Ortiz never recognized or identified the defendant as one of the assailants.

when cross-examination becomes a pointless exercise. See, *e.g., Dowie v. Black*, 90 Ill. App. 167, 171-72 (1900) (testimony may be stricken if the witness thwarts the defendant's cross-examination). Our holding, however, is based on the absence of the necessary evidentiary foundation that the statement of identification sought to be admitted was made after Ortiz perceived the defendant. The absence of this foundation precludes the admissibility of a prior statement of identification under section 115—12 (725 ILCS 5/115—12 (West 2000)).

Finally, we note that a fair reading of the State's examination of Ortiz suggests that the prosecution did not contest during the course of the trial, what is now our conclusion, that the victim never "perceiv[ed]" the defendant.

"Q. [The State]: And the lady you recognized because that's the one you had been having a conversation with?

A. [Ortiz]: Yes.

Q. [The State]: *The man you never saw?*

A. [Ortiz]: No, I did not see him." (Emphasis added.)

Relatedly, Officer Ferguson's testimony appears consistent with our conclusion.

"Q. [The State]: Did he [Ortiz] tell you he got a look at *one of them?*

A. [Officer Ferguson]: Yes." (Emphasis added.)

Accordingly, under the facts presented in this case, in the face of a clear and unequivocal denial by Ortiz that he ever identified the defendant as one of the offenders, the admission of the prior identification statement attributed to Ortiz by Officer Ferguson was inadmissible hearsay.

## B. Harmless Error

■ Inadmissible hearsay will not require reversal if there is no reasonable probability that the defendant would not have been found guilty had the hearsay evidence have been excluded. *People v. West*, 234 Ill. App. 3d 578, 590, 598 N.E.2d 1356 (1992). Even in the absence of Officer Ferguson's testimony that Ortiz identified the defendant shortly after the robbery, as we have already concluded, there was overwhelming, nonhearsay evidence introduced against the defendant. This second trial error, properly preserved by trial counsel, does not undermine the extensive incriminating evidence presented against the defendant. We find the trial court's error in admitting Officer Ferguson's testimony to the alleged out-of-court identification of the defendant by Ortiz to be harmless. Our assessment of the evidence is reinforced by the trial court's statement that whether Ortiz identified the defendant near the scene of the robbery "doesn't matter at all [because] there is more than enough without this." "An error is harm-

less where a reviewing court can safely conclude that a trial without the error would produce no different result." *Bradley*, 336 Ill. App. 3d at 69.

### III. Extended-Term Sentence

■ Finally, the defendant argues his extended-term sentence violates *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). Specifically, the defendant argues section 5—5—3.2(b) of the Unified Code of Corrections violates the United States and Illinois Constitutions because it allows the trial court to impose an increased penalty based on a prior conviction without alleging the factual predicate for the extended-term sentence in the charging instrument. 730 ILCS 5/5—5—3.2(b) (West 2000).

In this case the defendant was convicted of robbery, a Class 2 felony carrying a penalty of not less than three years, nor more than seven years. 720 ILCS 5/18—1 (West 2000). However, the trial court imposed an extended-term 10-year sentence because the defendant had a prior felony conviction of the same or greater class within the previous 10 years, specifically, the manufacture and delivery of cocaine (720 ILCS 570/401 (West 1998); see 730 ILCS 5/5—5—3.2(b) (West 2000)).

Section 5—5—3.2(b) authorizes the imposition of an extended-term sentence where a defendant was convicted of a felony after having been convicted of the same or a greater class felony in Illinois within the previous 10 years upon charges separately brought and tried. 730 ILCS 5/5—5—3.2(b)(1) (West 2000). The *Apprendi* Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63. The Supreme Court reasoned that prior convictions do not implicate *Apprendi* because they involve proceedings with their own procedural safeguards. *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63. As stated above, the *Apprendi* Court clearly exempted prior convictions from the category of sentence-enhancing factors that must be submitted to a jury and proven beyond a reasonable doubt. For this reason, this court has already rejected, on a number of occasions, the argument that section 5—5—3.2(b) violates the United States Constitution. See *People v. Pittman*, 326 Ill. App. 3d 297, 298, 761 N.E.2d 171 (2001). We find no need to further analyze this issue, and therefore, we reject the defendant's argument.

As for the defendant's contention that section 5—5—3.2(b) is unconstitutional with regard to the Illinois Constitution, this court

has adopted the view expressed in *Apprendi*, that "a defendant's prior conviction does not relate to the commission of the offense with which he stands charged and that the prior conviction is the result of proceedings in which the defendant had the right to a trial by jury and the State was required to establish his guilt beyond a reasonable doubt." *Pittman*, 326 Ill. App. 3d at 301; see *Apprendi*, 530 U.S. at 496, 147 L. Ed. 2d at 458-59, 120 S. Ct. at 2366. "We find these safeguards 'mitigate constitutional concerns regarding defendant's due process rights and jury trial guarantees.' " *Pittman*, 326 Ill. App. 3d at 301, quoting *People v. Lathon*, 317 Ill. App. 3d 573, 587, 740 N.E.2d 377 (2000).

## CONCLUSION

For the foregoing reasons, we affirm the defendant's conviction and sentence.

Affirmed.

WOLFSON and HALL, JJ., concur.