No. 3–05–0533

_____

Filed November 8, 2006.

IN THE
APPELLATE COURT OF ILLINOIS
THIRD DISTRICT

A.D. 2006

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 04-CF-4 |
| SIEMON T. MOORE, | ) ) | Honorable |
| Defendants-Appellee. | ) ) | Kathy Bradshaw-Elliot, Judge Presiding. |

_____

JUSTICE SLATER delivered the opinion of the court:
_____

The defendant, Siemon T. Moore, was charged with criminal sexual assault. 720 ILCS 5/12-13(a)(1) (West 2004). In the midst of a jury trial, the State, after admitting that the audio portion of a videotape used to record the defendant's post-arrest statement had malfunctioned, attempted to admit a three paragraph summary of the statement which had been prepared by a Kankakee city police detective. The trial court granted the defendant's motion to suppress his post-arrest statement on the ground that the statement was not voluntarily made and a mistrial was declared.

The State appeals the trial court's order granting the defendant's motion to suppress. For the following reasons, we affirm.

I. FACTS

The record reflects that when the defendant was arrested on January 1, 2004, he was given a form entitled, "Voluntary Statement" to sign. The form provided, in pertinent part:

"The person to whom I give the following voluntary statement is Det. Sgt. Jay Etzel, having identified and made himself known as a Kankakee City Police Detective. DULY WARNED AND ADVISED ME, AND I KNOW: 1. I have the right to remain silent. I do not have to talk to you unless I want to do so. 2. If I do want to talk to you, I must be advised that whatever I say can and will be used as evidence against me in court. 3. I have a right to consult with a lawyer and to have a lawyer present with me while I am being questioned. 4. If I want a lawyer, but am unable to pay for one, a lawyer will be appointed to represent me free of any cost to me. 5. A videotape providing a video and audio record of this interview is being made to insure my rights and the accuracy of our conversation. I voluntarily consent to the recording."

The defendant initialed all five sections of the form. Detective Etzel and defendant both signed the bottom of the form. The defendant then spoke with Detective Etzel on videotape for one hour and five minutes.

At trial, it was discovered that the audio portion of the defendant's videotaped

2

statement had malfunctioned. The State informed the trial court that it would not attempt to admit the videotape into evidence. Instead, the State intended to have Detective Etzel testify to the statements that defendant had made to him.

In response, the defendant filed a motion to suppress any statements given by him to police detectives after his arrest. In his motion, the defendant argued that his statement was not voluntarily given because he would not have waived his Miranda rights and given the statement without the guarantee that his words would be preserved. See Miranda v. Arizona, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966).

The defendant argued that the absence of the audio portion of the videotape rendered his Miranda waiver invalid. See Miranda v. Arizona, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966). The defendant also claimed that the "law of completeness" required that his complete statement be admitted into evidence.

As an offer of proof, the State read into the record Detective Etzel's three-paragraph summary of the defendant's one-hour plus statement.

Detective Etzel said that he transferred the defendant to the Detective Bureau on January 1, 2004. He read the defendant his Miranda rights. See Miranda v. Arizona, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966). The defendant told Etzel that he understood his rights and agreed to speak with Etzel. The defendant also agreed to have his statements audio and video taped. The interview began at 2:15 p.m. and ended at 3:20 p.m. In Etzel's summary, he said that the defendant's statement contained inconsistent explanations of events surrounding the charged offense. Etzel did not consider the defendant's statement to be a confession. The defendant did not

3

admit to any of the elements of criminal sexual assault. See 720 ILCS 5/12-13(a)(1) (West 2004).

At the hearing on the defendant's motion to suppress, the trial court questioned the assistant state's attorney about paragraph five of the Voluntary Statement form. The following conversation took place:

> "THE COURT: What about paragraph five, Mr.
> Deuel?                        MR. DEUEL: I understand
> paragraph five.    THE COURT:  That's the issue here.
> Quite frankly, just the converse, when you have a case
> where they do video record them and there is no paragraph
> five, I've not let it in.  So it's just the opposite of that.  I'm
> going to grant Mr. Sack's motion to suppress.  I do not think
> it would be fair.  I think it forces the defendant to testify."

The trial court also discussed the voluntariness of the defendant's statement. Specifically, the judge stated:

> "This defendant, in fact, signed the Miranda waiver
> when it had a paragraph five on it which said a videotape
> providing a video and audio recording of this interview is
> being made to insure my rights and the accuracy of our
> conversation.  I voluntarily consent to the recording.  If that
> were not on this Miranda, my ruling would be different.  But I
> do not know, as I sit here, whether – none of us know –
> whether Mr. Moore gave his statement based on paragraph

4

five and that's – that was the reason he voluntarily gave his statement."

The trial court also held that Detective Etzel's statement should be suppressed based upon: (1) the completeness doctrine (see People v. Stackhouse, 354 Ill. App. 3d 265, 820 N.E.2d 1027 (2004)); and (2) if Etzel testified about the defendant's post-arrest statement it would force the defendant to testify. A mistrial was declared.

## II. ANALYSIS

On appeal, the State claims that the trial court's order granting the defendant's motion to suppress is incorrect as a matter of law.

Specifically, the State contends that the trial court erred when it found: (1) the defendant's statement to the police was not voluntary; (2) the defendant had a right to have his statement electronically recorded; (3) the "completeness doctrine" barred the defendant's statement from being admitted into evidence; and (4) the defendant would be forced to testify if Etzel's statement was admitted into evidence.

## A. Voluntariness of Statement

In determining whether a defendant's statement was voluntarily made, a court must look at the totality of the circumstances surrounding the making of the statement. See People v. Brown, 169 Ill. 2d 132, 661 N.E.2d 287 (1996). Of particular importance is whether the police made any threats or promises to obtain the defendant's statement. People v. Gilliam, 172 Ill. 2d 484, 670 N.E.2d 606 (1996).

The question of whether the defendant's statement was voluntary is subject to de novo review. People v. Sanchez, 362 Ill. App. 3d 1093, 841 N.E.2d 478 (2005). We have reviewed the record and agree with the trial court that the defendant's statement

5

was not voluntarily made.

Here, the police were under no obligation to promise the defendant that his statement would be video and audio recorded to insure his rights and the accuracy of the conversation. However, they did make such a promise in paragraph five of the Voluntary Statement form.

The police broke that promise when the audio portion of the videotape malfunctioned. This is true even if the malfunction was not the fault of the police department. We need not determine whether the defendant would have signed the Voluntary Statement form if he had not been promised that his statement would be preserved through video and audio tape.

The totality of the circumstances surrounding the making of the defendant's post-arrest statement indicate that the defendant was promised a video and audio recording of his statement and that promise was not kept. This is sufficient evidence that the defendant's statement was not voluntarily given. The trial court properly granted the defendant's motion to suppress.


B. Defendant's Right to Have Statement Recorded

Next, the State argues that the trial court erroneously found that the defendant had a right to have his statement electronically recorded. As support for this contention, it refers to the conversation between the trial court and the assistant state's attorney regarding paragraph five of the Voluntary Statement form. Again, the following conversation took place:

"THE COURT: What about paragraph five, Mr.

6

Deuel?                          MR. DEUEL: I understand

paragraph five.    THE COURT:  That's the issue here.

Quite frankly, just the converse, when you have a case

where they do video record them and there is no paragraph

five, I've not let it in.  So it's just the opposite of that.  I'm

going to grant Mr. Sack's motion to suppress.  I do not think

it would be fair.  I think it forces the defendant to testify."

The State also relies on another statement in the record where the trial court noted that if paragraph five were not on the Voluntary Statement form her ruling would have been different.  We have reviewed the trial court's comments and do not find that the trial court held that the defendant was entitled to have his statement electronically recorded.

Instead, the trial court ruled that the police promised the defendant a video and audio recording of his statement in paragraph five of the Voluntary Statement form which the defendant signed.  The trial court properly found, without such a recording, the statement was not voluntarily given.  The trial court also specifically held that in the absence of paragraph five her ruling would have been different.  We find no error.

### C.  Remaining Issues

The State also argues that the trial court erred in ruling: (1) the completeness doctrine barred the defendant's statement from being admitted into evidence; and (2) if Detective Etzel were allowed to testify without an audio recording of the defendant's statement it would force the defendant to testify.

We need not address these issues based upon our previous ruling that the

7

defendant's statement was not voluntarily given. The trial court properly granted the defendant's motion to suppress.

Accordingly, the judgment of the circuit court of Kankakee County is affirmed.

Affirmed.

O'BRIEN, J., concurs.

SCHMIDT, P.J., dissents.


PRESIDING JUSTICE SCHMIDT, dissenting:

I disagree with the majority's conclusion that the equipment error renders the defendant's *Miranda* waiver and subsequent statement involuntary, and therefore, I dissent.

There is no indication in the record that the "promise" to tape the interview was something for which the defendant bargained. In other words, the record is devoid of any facts that suggest that but for this promise, the defendant would have refused to sign the *Miranda* waiver or give a statement. The document signed by the defendant is clearly an inartfully worded boilerplate *Miranda* waiver form used in Kankakee County to appease a local circuit court judge who will not admit an audiotape of a confession or statement unless the defendant has agreed in writing to the audiotape.

There is absolutely no indication in the record that the tape's technical deficiency was a result of intentional wrongdoing by the police. The lack of audio on the tape simply appears to be an unfortunate equipment malfunction or unintentional operator error. It does not rise to the level of an unkept law enforcement promise sufficient to bring into question the voluntariness of the defendant's statement. Traditionally, such

8

unkept promises or improper inducements that defeat seemingly voluntary statements have taken the form of promises of probation (*People v. Jones*, 8 Ill. App. 3d 849, 291 N.E.2d 305 (1972)), or other improper promises of leniency (*People v. Overturf*, 67 Ill. App. 3d 741, 385 N.E.2d 166 (1979)).

It is interesting to note that in *Overturf*, this court discussed the fact that defendant bargained for the promise of leniency before giving his inculpatory statement. *Overturf*, 67 Ill. App. 3d at 744. When finding such a promise of leniency rendered defendant's statement involuntary, the *Overturf* court focused almost entirely on the circumstances surrounding the bargain. *Overturf*, 67 Ill. App. 3d at 744. Again, there is no indication in the record that the promise to audiotape was something for which this defendant bargained.

This court has acknowledged that not every unkept promise, even a promise of leniency, renders a statement involuntary. In *People v. Anderson*, Justice Slater noted that a "promise of leniency did not render defendant's statement involuntary, since the defendant admitted that it had no effect on his decision to cooperate because he had made that decision prior to the promise." *People v. Anderson*, 225 Ill. App. 3d 636, 641, 587 N.E.2d 1050, 1055 (1992). The proffered evidence from Detective Etzel in this case shows that before defendant signed the waiver form, he was read his *Miranda* rights verbally and agreed to waive them and speak to the police. Therefore, just as in *Anderson*, it appears from the State's proffer that this defendant also agreed to make a statement "prior to the promise" to record the statement contained in the written boilerplate *Miranda* waiver form.

9

The majority claims *Gilliam* states that "whether the police made any threats or promises to obtain the defendant's statement" is "of particular importance" when analyzing the voluntariness of a statement. Slip op. at 6. That is a strained reading of the test for voluntariness set forth by the *Gilliam* court. The *Gilliam* court stated:

> "[T]he test of voluntariness is whether the defendant made the statement freely, voluntarily, and without compulsion or inducement of any sort, or whether the defendant's will was overcome at the time he or she confessed. [Citation.]
>
> Whether a statement is voluntarily given depends upon the totality of the circumstances. The question must be answered on the facts of each case; no single fact is dispositive. Factors to consider when determining voluntariness include: the defendant's age, intelligence, background, experience, mental capacity, education, and physical condition at the time of questioning; the legality and duration of the detention; the duration of the questioning; <u>and any physical or mental abuse by police, including the existence of threats or promises</u>." (Emphasis added.)
>
> *Gilliam*, 172 Ill. 2d at 500-01.

Clearly, the "threats or promises" listed by the *Gilliam* court were threats or

promises related to "physical or mental abuse." *Gilliam*, 172 Ill. 2d at 501. There is no indication that the Supreme Court placed "particular importance" on these threats or promises above and beyond any other factor. In fact, the Supreme Court stated, "no single fact is dispositive." *Gilliam*, 172 Ill. 2d at 500. Looking at the totality of the circumstances and all of the factors set forth in *Gilliam*, the failure to audiotape the defendant's statement cannot be said to have rendered it involuntary.

Furthermore, after stating that the police broke their promise, the majority notes that a court "need not determine whether the defendant would have signed the voluntary statement form if he had not been promised that his statement would be preserved through video and audiotape." Slip op. at 7. It cites no authority for this proposition because none exists. Today, the majority announces an *ipso facto* test that has no basis or foundation in well-settled precedent. To my knowledge, no court, until today, has held that the test to determine whether a defendant's inculpatory statement was voluntary starts and finishes with the inquiry of whether the police broke a promise. (If the majority is correct, then by analogy a "john" who passes either counterfeit money or a bad check to a hooker is guilty of rape.) Certainly, broken promises are but one factor announced in *Gilliam*. And, as this court has previously acknowledged, a broken promise is not by itself sufficient to render a statement involuntary. See *Anderson*, 225 Ill. App. 3d at 641. The *Anderson* court correctly noted that the broken promise "had no effect on [the defendant's] decision to cooperate" and, therefore, when correctly reviewing the totality of the circumstances, found that defendant's inculpatory statement was voluntary. *Anderson*, 225 Ill. App. 3d at 641. The majority's declaration that the

11

sole factor of a broken promise is by itself "sufficient evidence that the defendant's statement was not voluntarily given" (slip op. at 7) is a rapid departure from and expansion of well-settled law to which I cannot agree. In essence, today the appellate court has overruled the Supreme Court of Illinois by replacing the multi-factor *Gilliam* test with it's own one-factor (broken promise) test. I am reasonably comfortable that we cannot do that.

Finally, I disagree with the trial court's assertion that allowing the officer to testify to the content of defendant's statement would somehow force the defendant to testify and violate his fifth amendment rights. If that were the case, no officer would ever be allowed to testify to inculpatory statements made by a defendant for fear that the defendant would have to take the stand to refute the officer's testimony. For that matter, taking the trial court's reasoning to its logical extreme, the State would never be allowed to put on any inculpatory evidence for fear that the only way to rebut such evidence would be for the defendant to testify to proclaim his innocence and refute the State's evidence.